**In the Matter of PIONEER OIL &
GAS CO., Inc.
No. 63–488.**

United States District Court,
E. D. Louisiana,
New Orleans Division.
Nov. 10, 1971.

Edward M. Heller, of Bronfin, Heller, Feldman & Steinberg, New Orleans, La., for Trustee.

M. Hepburn Many, Trustee.

James R. Pertuit, New Orleans, for Bank of Louisiana in New Orleans.

CHRISTENBERRY, District Judge.

Pursuant to the Bankruptcy Act § 39, Title 11 U.S.C. § 67(c) (1964), petitioner, Bank of Louisiana in New Orleans (hereafter the Bank), seeks review of an order by the referee in this bankruptcy matter whereby petitioner's objection to the trustee's final account was overruled and petitioner relegated to the status of an ordinary, rather than a secured, creditor of the bankrupt.

On the basis of a garnishment proceeding brought against the garnishee-turned-bankrupt, Pioneer Oil & Gas Co., Inc. (hereafter Pioneer), and a judgment pro confesso obtained in state court against Pioneer under the garnishment, the Bank seeks secured creditor treatment. It is the trustee's position, however, with which the referee agreed, that the Bank never effected a valid seizure and correspondingly did not have a lien, or a privilege as it is commonly called in Louisiana, on any of Pioneer's assets. In addition, the trustee advances the alternative argument, for the first time at this stage of the litigation, that even should the court find that the Bank has a lien on the bankrupt's property, such lien is invalid as a statutory lien under Bankruptcy Act § 67(c) (1)

(B), Title 11 U.S.C. § 107(c) (1) (B) (Supp. II, 1966).

For the reasons hereafter assigned, the court finds that the referee misconstrued the Louisiana garnishment law and that a valid lien on the bankrupt's assets did exist in favor of the Bank. Furthermore, this lien is essentially a judicial, not a statutory, lien and, accordingly, is outside the scope of § 67(c) (1) (B) of the Bankruptcy Act.

There is no dispute among the parties or the referee as to the facts. The chronology of events giving rise to this motion to review is as follows. On November 17, 1962, the Bank obtained a money judgment in a Louisiana state court against James R. Mary, who was then president of Pioneer, and on December 17, 1962, the judgment was made executory. Two days later, on December 19, 1962, garnishment proceedings were instituted by the Bank against Pioneer with interrogatories being served on the garnishee on December 26, 1962. Pioneer's failure to answer the garnishment interrogatories within the fifteen-day time period allowed by article 2412 of the Louisiana Code of Civil Procedure (1960) led the Bank to move contradictorily for a judgment pro confesso, which judgment was issued against Pioneer on January 25, 1963, in the amount of $3000.00 with six percent interest from February 28, 1962, plus ten percent attorney's fees and costs.

In May of 1963, the Bank attempted to have a seizure of Pioneer's property made by the Orleans Parish Civil Sheriff, but both parties agree that a seizure was not effected at that time. The Pioneer property which the Bank sought to levy against was furniture and fixtures in the Pioneer offices in New Orleans. These objects were subsequently sold at auction to the successful bidder for the office building in which they were located. On June 4, 1963, Pioneer filed this bankruptcy matter as a Chapter X reorganization, and the following day this court restrained, *inter alia*, the civil sheriff from proceeding with any attempted seizure and sale of Pioneer's assets.

Relying on article 2411 [1] *et seq.* of the Louisiana Code of Civil Procedure, the Bank's position is that a valid seizure was effected against so much of Pioneer's property as might be necessary to satisfy its judgment against the principal debtor, President Mary. It is contended that this seizure was completed as of December 26, 1962, the date that the garnishment interrogatories were served on the garnishee.

Respondent, the trustee, has, on the other hand, strenuously asserted that the seizure mentioned in the second paragraph of article 2411 refers only to that property in the hands of the garnishee which actually belonged to the judgment debtor. Of course, the seizure also applies to the garnishee's indebtedness, present and future, to the principal debtor, but the parties here are only concerned with whether or not there was a seizure of "property." In support of his position that an article 2411 seizure is applicable only to the debtor's property in the garnishee's possession, respondent cites Louisiana Civil Code, article 2292, which states, that privileges or liens, such as one obtains by a seizure,[2] can only be claimed for those debts for

1. La.Code Civ.P. art. 2411 (1960) provides:
The judgment creditor, by petition and after the issuance of a writ of fieri facias, may cause a third person to be cited as a garnishee to declare under oath what property he has in his possession or under his control belonging to the judgment debtor and in what amount he is indebted to him, even though the debt may not be due. He may require the third person to answer categorically and under oath the interrogatories annexed to the petition within the delay provided by Article 2412.
The seizure shall take effect upon service of the petition, citation, and interrogatories.

2. La.Code Civ.P. art. 2292 (1960) provides in part: "The seizing creditor, by the mere act of seizure, acquires a privilege on the property seized, which entitles him to a preference over ordinary creditors."

which the law strictly provides. It is time-honored in Louisiana jurisprudence that "a privilege, being an extraordinary preference granted in derogation of rights common to all, is subject to the rule of stricti juris * * * "[3] and must, accordingly, be narrowly construed. Louisiana also, however, applies the traditional rule of statutory interpretation that requires statutes in pari materia, that is, dealing with the same subject matter, to be construed together.[4] It is evident that the referee failed to consider article 2411 of the Louisiana Code of Civil Procedure in conjunction with articles 2412–2413, all of which are interrelated.[5]

The essence of petitioner's argument here is that the judgment pro confesso obtained against Pioneer on January 25, 1963, was retroactive to December 26, 1962, the date of the service of garnishment interrogatories and the contemporaneous seizure. The Bank's judgment against the garnishee was obtained under article 2413. This article provides that if the garnishee fails to answer the interrogatories within fifteen days after service, as Pioneer did, then the judgment creditor is allowed to proceed by contradictory motion. The Bank followed this procedure. Article 2413 goes on to state that the garnishee's failure to answer the interrogatories prior to the filing of the motion is prima facie proof that the garnishee has property belonging to the judgment debtor in an amount sufficient to satisfy the judgment, interest, and costs.

█ The real thrust of article 2413, for our purposes, is the sentence stating that "[j]udgment shall be rendered against the garnishee on trial of the motion unless he proves that he had no property of and was not indebted to the judgment debtor." Pioneer failed to oppose the motion and judgment pro confesso was given to the Bank. This judgment was, legally speaking, based on an implied confession by the garnishee that on the date of service of the garnishment interrogatories Pioneer had control over a sufficient amount of the principal debtor's property as would satisfy the judgment held by the Bank. Morris

3. Pelican State Associates, Inc. v. Winder, 253 La. 697, 219 So.2d 500, 502 (1969).

4. Arata v. Louisiana Stadium & Exposition District, 254 La. 579, 225 So.2d 362, 371 (1969); see Pelican State Associates, Inc. v. Winder, 253 La. 697, 219 So.2d 500, 502 (1969).

5. La.Code Civ.P. art. 2412 (1960) provides:
The sheriff shall serve upon the garnishee the citation and a copy of the petition and of the interrogatories, together with a notice that a seizure is thereby effected against any property of or indebtedness to the judgment debtor.

Service shall be made in the manner provided for service of citation, except that if the garnishee is an individual, service must be personal. If the garnishee has concealed or absented himself with the purpose of avoiding personal service, the court may order that service be made in any other manner provided by law.

The garnishee shall file his sworn answers to the interrogatories within fifteen days from the date of service.

La.Code Civ.P. art. 2413 (1960) provides:
If the garnishee fails to answer within the delay provided by Article 2412, the judgment creditor may proceed by contradictory motion against the garnishee for the amount of the unpaid judgment, with interest and costs. The failure of the garnishee to answer prior to the filing of such a contradictory motion is prima facie proof that he has property of or is indebted to the judgment debtor to the extent of the judgment, interest, and costs.

Judgment shall be rendered against the garnishee on trial of the motion unless he proves that he had no property of and was not indebted to the judgment debtor. If on the trial of such motion, the garnishee proves the amount of such property or indebtedness, the judgment against the garnishee shall be limited to the delivery of the property or payment of the indebtedness, as provided in Article 2415.

Regardless of the decision on the contradictory motion, the court shall render judgment against the garnishee for the costs and a reasonable attorney's fee for the motion.

Lake & Son v. Strickland, 55 So.2d 51, 54 (La.App. 1st Cir. 1951).

At this point the issue to be determined is whether the seizure of December 26, 1962, was effective or whether the Bank had to make an additional seizure pursuant to its judgment pro confesso of January 25, 1963. To require that the Bank procure another seizure is immediately to infer that the seizure made by service of interrogatories was a meaningless legal contrivance and for the most part the second paragraph of article 2411 would be rendered superfluous. Garnishees refusing or neglecting to answer garnishment interrogatories would not feel threatened by the seizure provision of article 2411 if it was still necessary for the garnisher to obtain a judgment by contradictory motion and then effect another seizure.

■ Since the lien claimed by the Bank is asserted under state law it will also be governed by state law as to its validity or invalidity.[6] The court finds the case of Morris Lake & Son v. Strickland, 55 So.2d 51, 54 (La.App. 1st Cir. 1951), to be dispositive. There the judgment debtor declared bankruptcy during the interval between the time that the garnishment interrogatories were served and the time that a judgment pro confesso was rendered against the garnishee. The garnishee then sought unsuccessfully to have the judgment pro confesso nullified arguing that § 67(a) of the Bankruptcy Act required it because the garnishment occurred within four months of the adjudication in bankruptcy. Since the original judgment was obtained well over four months prior to the adjudication, the Louisiana court upheld the seizure despite the fact that the judgment pro confesso was not obtained until after the judgment debtor became a bankrupt. The court stated:

[T]he judgment rendered pro confesso is a judgment rendered by reason of the [garnishee's] failure to answer. Such a failure is considered as a confession that sufficient funds were held by it to satisfy the judgment against [the principal debtor] and moreover this pro confesso judgment is effective from the date of service of the interrogatories * * *.[7]

■ Accordingly, in the present case the Bank's judgment pro confesso of January 25, 1963, was effective from December 26, 1962, and the seizure of that date continued to be valid giving the Bank the status of a secured creditor in this bankruptcy matter. *Cf.* Sun Sales Co., Inc. v. Hodges, 224 So.2d 157 (La.App. 4th Cir. 1969), aff'd, 256 La. 687, 237 So.2d 684 (1970).

■ Having found that the Bank did have a garnishment lien on the assets of the bankrupt so as to have priority over the general creditors, the court must now consider the respondent's alternative argument that this is a statutory lien and as such is vitiated against the trustee by § 67(c)(1)(B) of the Bankruptcy Act.[8] This question is soundly

---

6. Holt v. Crucible Steel Co. of America, 224 U.S. 262, 32 S.Ct. 414, 56 L.Ed. 756 (1912); *In re* First Nat'l Bank of Canton, Ohio, 135 F. 62, 65 (6th Cir. 1905).

7. 55 So.2d at 54. See generally Comment, Garnishment in Louisiana, 18 La.L.Rev. 446, 494–498 (1958). At the time of Morris Lake & Son v. Strickland, article 2411 of the Louisiana Code of Civil Procedure had not been enacted. The forerunner, however, was essentially Code of Practice article 246 which stated in part:

The property and effects in the possession of a third person, belonging to the defendant, or debts * * * to

such defendant, shall be decreed to be levied as by the sheriff, from the date of the service of the interrogatories on such persons.

8. Bankruptcy Act § 67(c)(1)(B), 11 U.S.C. § 107(c)(1)(B) (Supp. II, 1966), provides in part:

(c)(1) The following liens shall be invalid against the trustee:

* * * * *

(B) every statutory lien which is not perfected or enforceable at the date of bankruptcy against one acquiring the rights of a bona fide purchaser from the debtor on that date, whether or not such purchaser exists * * *.

**1060**

resolved by an examination of the definition of the term statutory lien as provided in the Act in § 1(29a), 11 U.S.C. § 1(29a) (Supp. II, 1966):

> "Statutory lien" shall mean a lien arising solely by force of statute upon specified circumstances or conditions, but shall not include any lien provided by or dependent upon an agreement to give security, whether or not such lien is also provided by or is also dependent upon statute and whether or not the agreement or lien is made fully effective by statute.

If this section is read broadly, it is possible to conclude that the definition of a statutory lien includes such liens as one obtains through a writ of execution, levy, filing, attachment, or garnishment. These liens are created and controlled by statute although they arise by judicial proceedings. Literally, a garnishment lien fits within § 1(29a), because it arises solely by force of a statute in certain specified circumstances and is not dependent upon the consent of the parties. It is, however, the opinion of this court and several commentators [9] that a lien, such as garnishment creates, arising from judicial proceedings is not contemplated by the definition of a "statutory lien." As one authority has stated: "In view of the explicitness of the reference to liens by judicial proceedings in section 67a and the well understood role of that subdivision in respect to such liens, the risk that any court will now assume that section 67c applies to them is surely minimal." [10]

In conclusion, the argument that the lien resulting from the seizure under article 2411 of the Louisiana Code of Civil Procedure is a statutory lien is devoid of merit. The lien is judicial and, in addition, it is valid against the trustee, entitling the Bank to secured creditor status. Accordingly, the decision of the referee is reversed. So ordered.

---

9. 1 Collier, Bankruptcy ¶ 1.29a, at 130.26 (14th ed. J. Moore 1968); 4 Collier, Bankruptcy ¶ 67.20, at 216 (14th ed. J. Moore 1967); Kennedy, *The Bankruptcy Amendments of 1966*, 1 Ga.L.Rev. 149, 153 (1967); King, *Statutory Liens Under New § 67c of the Bankruptcy Act,* 42 Ref.J. 11 (1968); Seligson, *Treatment of Statutory Liens in Bankruptcy —The 1966 Amendments to Sections 67b and c,* 27 Fed.B.J. 111, 112–113 (1967).

10. Kennedy, *The Bankruptcy Amendments of 1966*, 1 Ga.L.Rev. 149, 153 (1967).