United States Court of Appeals,

Fifth Circuit.

No. 96-30623.

FARM CREDIT BANK OF TEXAS, Plaintiff-Appellee,

v.

Lorita Richard GUIDRY, et al., Defendants,

Lorita Richard Guidry & Patrick Guidry, in his capacity as Trustee of the Lorita R. Guidry Trust, Defendants-Appellants.

April 14, 1997.

Appeal from the United States District Court for the Middle District of Louisiana.

Before JOLLY, JONES and WIENER, Circuit Judges.

WIENER, Circuit Judge:

This is an appeal challenging the district court's determination that, at the time of its seizure under garnishment, i.e., during its initial, "accumulation" period, the "American Legacy II, Lincoln National Variable Annuity Account" (the Lincoln National account) previously purchased by Defendant-Appellant Lorita Guidry and transferred to her grantor trust, is not an "annuity" for purposes of Louisiana's seizure laws and therefore not exempt from garnishment by Guidry's judgment creditor. We affirm.

I

FACTS AND PROCEEDINGS

In December, 1993, Plaintiff-Appellee Farm Credit Bank of Texas (FCBT) obtained a judgment in the Western District of Louisiana against Guidry for her default on two promissory notes.[1] The judgment was in the principal amount of $389,458.76 plus interest, costs and attorney's fees.[2] As both Guidry and the trustee of the trust that owned the Lincoln National account resided

---

[1] Guidry and her husband, who is now deceased, executed a promissory note in the amount of $383,000 on March 26, 1980 and another in the amount of $430,000 on November 9, 1981.

[2] To date, the principal and accrued interest on the judgment amounts to more than $1,200,000.

in the Middle District of Louisiana, FCBT registered its judgment in the district court there in May 1995, pursuant to 28 U.S.C. § 1963, preparatory to execution under Federal Rule of Civil Procedure 69.

After the judgment was so registered, Guidry's son Patrick (the trustee) was made garnishee in his capacity as trustee of the Lorita Guidry Irrevocable Trust (Trust). The Trust had been created by Guidry as sole grantor and beneficiary in April 1992, and the Lincoln National account is its only asset.[3] The trustee was served with garnishment interrogatories on June 21, 1995 and was ordered to file his answers within 15 days.

The trustee failed to answer the garnishment interrogatories within the time allowed, so in August 1995, FCBT filed a motion for judgment pro confesso.[4] Only then did Guidry and the trustee (collectively, the defendants) file answers to FCBT's garnishment interrogatories. In those answers the defendants asserted that (1) the property held for Guidry was exempt from seizure by virtue of the Trust[5] and (2) the only property in the Trust was an "annuity contract," which itself is exempt from garnishment under Louisiana law.

In March 1996, after conducting an evidentiary hearing, the district court granted FCBT's motion and rendered the requested judgment pro confesso. In its judgment, the court held that the Lincoln National account is not yet (and may never become) an "annuity" within the intendment of the applicable provisions of Louisiana law, and is therefore subject to garnishment.

The defendants timely filed a motion to amend or vacate the judgment and a motion for new

---

[3]In 1991, Guidry invested $490,000 in the Lincoln National account. Then, in April 1992, Guidry donated the Account to the Trust.

[4]Under Louisiana law, which is made applicable by Fed.R.Civ.P. 69(a), the garnishee's failure to answer garnishment interrogatories constitutes prima facie proof that he has property of, or is indebted to, the judgment debtor to the extent of the judgment, interests and costs, and is regarded as an implied confession that, on the date of service of the interrogatories, he had control over a sufficient amount of the judgment debtor's property to satisfy the judgment. La.Code Civ. Proc. Art. 2413; *In re Pioneer Oil & Gas Co.,* 333 F.Supp. 1055, 1058 (E.D.La.1971).

[5]The district court rejected that argument, holding that the Trust itself was not exempt from seizure under Louisiana law because Guidry was both the settlor and a beneficiary of the Trust. The defendants do not challenge that determination on appeal.

trial under Fed.R.Civ.P. 59, purporting to have discovered new evidence. The district court denied the defendants' motions some six weeks later, and this appeal followed.

II

ANALYSIS

A. Is The Lincoln National Account an Annuity Under Louisiana Law?

1. *Standard of Review*

We review the district court's application of Louisiana law de novo.[6] Although variable annuities are not particularly recent financial innovations—they first appeared on the scene in 1952 and have been growing in popularity ever since—neither the legislature nor the courts of Louisiana have spoken on the questions whether and to what extent such products should be considered "annuities" for the purpose of shielding them from seizure by creditors. Consequently, we must make an "*Erie*-guess" as to how the Louisiana Supreme Court would rule.[7] "When making an *Erie*-guess in the absence of explicit guidance from the state courts, we must attempt to predict state law, not to create or modify it."[8]

2. *The Lincoln National Account*

The Lincoln National account, labeled a "Variable Annuity Account" by the issuer, appears to be typical of the kinds of "variable annuities" offered primarily by insurance companies industry-wide. By its terms, the account has two distinct phases: the initial "accumulation period" and the final "annuity period." During the accumulation period Guidry directs the investment of her purchase payments into sub-accounts, selecting them from an array of various investment portfolios. Throughout this period Guidry retains the power to control the allocation of funds among the various sub-accounts, as well as the power to withdraw some or all of the presently invested funds and to terminate the account altogether. The income earned by these funds once invested remains free of

---

[6]*See Doddy v. Oxy USA, Inc.,* 101 F.3d 448, 461 (5th Cir.1996).

[7]*See Deramus v. Jackson Nat'l Life Ins. Co.,* 92 F.3d 274, 277 (5th Cir.1996).

[8]*United Parcel Service, Inc. v. Weben Industries, Inc.,* 794 F.2d 1005, 1008 (5th Cir.1986).

United States income tax until such time as Guidry elects to withdraw it.[9]

The annuity period commences on the "Maturity Date," or "Annuitization Date." This is the title given to the date on which the accumulation period ends and the annuity period begins. The Maturity Date occurs automatically on Guidry's 85th birthday—April 4, 2018—unless before that time Guidry should unilaterally terminate the account, withdraw all funds, or exercise her option to accelerate the Maturity Date by giving 30 days' written notice.

At all times during the accumulation period, i.e., before the Maturity Date, Guidry bears the risk of loss on her investments within the account, has the right to vote her shares, and, as noted, has the power to make withdrawals from or even close out her account. It is only during the annuity period, which commences on the Maturity Date, that (1) the risk of loss shifts to the issuer, (2) the issuer begins making regular annuity payments pursuant to whichever payment option Guidry shall have pre-selected, and (3) the power to vote her shares, direct the investment of funds in her account, withdraw any portion of the principal or interest from time to time, or terminate the account altogether no longer belongs to Guidry.

The district court reached the conclusion that the Lincoln National account is not an annuity under Louisiana law by breaking the account down into its two component phases and analyzing each. As a result, the court determined that, for purposes of exemption from seizure, the account would only become an annuity, if at all, after the Maturity Date. Although we ultimately reach the same conclusion, we believe that this case merits further explanation.

3. *Louisiana's Exemption Statutes*

Three separate Louisiana statutory provisions exempt annuities from seizure by creditors, but the Louisiana Insurance Code, LSA R.S. 22:647, is the one that applies to the Lincoln National account at issue here. Under that statutory provision, an account is exempt from garnishment if it qualifies as an "annuity contract."[10] The Louisiana Insurance Code does not define the term "annuity

---

[9]*See* 26 U.S.C. § 817. The funds invested as principal are already after-tax funds of the owner; it is only the earnings on those funds that enjoy favorable income tax deferral.

[10]LSA R.S. 22:647 provides in pertinent part:

contract," but the parties are in agreement that the general definition of an annuity in article 2793 of the Louisiana Civil Code governs the term as it is applied elsewhere in the State's statutes. Article 2793 defines an annuity as follows:

> The contract of annuity is that by which one party delivers to another a sum of money, and agrees not to reclaim it so long as the receiver pays the rent agreed upon.

Under that definition, a fundamental characteristic of an annuity is the complete divestiture by the annuitant of all ownership interest in the principal fund. An annuitant has an interest "only in the payments themselves and not in any principal fund or source from which they may be derived; an annuitant surrenders all right and title in and to the money he pays for it."[11]

Here, that clearly is not the case prior to the Maturity Date of the Lincoln National Account. According to the terms of her account, Guidry has retained the power to direct her investments, to vote the shares attributable to her investment, to withdraw funds from her account with impunity throughout the entire accumulation period, and even to terminate the account and recover all remaining funds.[12] Moreover, the defendants do not argue, nor does the record on appeal indicate, that the types of annuities traditionally exempted from seizure under Louisiana law embody even one of the various rights and powers of ownership retained by Guidry over the Lincoln National account during the accumulation period.

The defendants contend that the account nevertheless should be treated as an "annuity contract" for exemption purposes because the account is (1) labeled a "variable annuity," (2) referred

---

*Sec.647. Exemption of proceeds; life, endowment, annuity.*

> B. The lawful beneficiary, assignee, or payee, including the annuitant's estate, of an *annuity contract,* heretofore or hereafter effected, shall be entitled to the proceeds and avails of the contract against the creditors and representatives of the annuitant or the person effecting the contract, or the estate of either, and against the heirs and legatees of either such person, saving the rights of forced heirs, and such proceeds and avails shall also be exempt from all liability for any debt of such beneficiary, payee, or assignee or estate, existing at the time the proceeds or avails are made available for his own use. (emphasis added)

[11]*WellTech, Inc. v. Abadie,* 666 So.2d 1237 (La.App. 5th Cir.), *vacated on other grounds,* 672 So.2d 698, *reaffirmed,* 683 So.2d 809 (La.App. 5th Cir.1996).

[12]In fact, Guidry has withdrawn $178,325 from her account.

to as an "annuity" throughout the contract, and (3) approved for sale by the Louisiana Department of Insurance. The first two facets of that argument are clearly meritless, as "[i]t is the substance of the arrangement rather than the label affixed to it" that determines whether the account is an annuity and subject to exemption.[13] As for regulatory approval of the *form* of the account, the defendants fail to demonstrate how the Louisiana Department of Insurance's blessing signifies a determination that the contract is, in fact, an annuity.[14] Instead, in the absence of any indication to the contrary, we must assume on the basis of ordinary logic that approval of the Lincoln National account's form by the Department of Insurance signifies only that the account is not unlawful and its use is permissible. Such approval does not reflect that the Department of Insurance has passed judgment on the propriety—much less all of the legal implications—of labeling the account a "variable annuity." Thus, as the Lincoln National account does not purport by its terms to be exempt from seizure, its approval for sale by the Louisiana Department of Insurance has no bearing on our analysis.

Amici Curiae Lincoln National Life Insurance Company (which issued the account) and the American Council of Life Insurance offer additional arguments in support of the general proposition that "variable annuities" should be held to be exempt from seizure under Louisiana law. But FCBT is not taking issue with the idea that an account may be classified as an "annuity" even though "rents" are to be paid in some form other than fixed annual payments.[15] In fact, FCBT concedes that an

---

[13]*In re Young,* 806 F.2d 1303, 1307 (5th Cir.1987); *Cashio v. Tollin,* 686 So.2d 1066, 1068 (La.App. 5 Cir.1996).

[14]Louisiana R.S. 22:620, which is cited by the defendants in support of their argument, provides the following:

> 22:620 Approval of forms
>
> A. No basic insurance policy *form* other than surety bond forms, or application form where written application is required and is to be attached to the policy, or be a part of the contract or printed life or health and accident rider or endorsement form shall be issued, delivered, or used unless [such form] has been filed with and approved by the commissioner of insurance... (emphasis added).

[15]For the sake of background, the traditional concept of an "annuity" is a fixed annuity, which periodically and regularly pays a specified sum of money. In contrast, a variable annuity is a more recently developed income tax sensitive form of investment that also pays out periodically and regularly, but based at least in part upon fluctuations in the value of securities portfolios in which an investment is made.

account should not be disqualified from classification as an "annuity" simply because it permits the annuitant to share a portion of the investment risks and rewards, or otherwise permits the annuitant to take advantage of the prospect of a growing marketplace by agreeing to tie the size of annuity payments to the market value of investments in which the principal has been placed. Rather, FCBT argues, the salient issue in the instant appeal is whether an investment account like the Lincoln National account can be characterized as an "annuity contract" under Louisiana law at any time during the period in which the investor retains not only some but virtually all of the incidents of control over the principal fund, as is the case here throughout the accumulation period of the account. FCBT takes particular umbrage with the unfettered withdrawal provisions in the Lincoln National account.

The thrust of the argument of Amicus American Council is that there is nothing inconsistent between Louisiana's definition of an annuity contract and the existence of a withdrawal feature. To support its argument, American Council points to Louisiana Civil Code article 2796, which provides that annuities are "essentially redeemable." We interpret article 2796, however, to contemplate redemption only by the entity or person who sold the annuity contract, not by the annuitant. Article 2796 reads in its entirety:

> Constituted annuity is essentially redeemable.
>
> The parties may only agree that the same shall not be redeemed prior to a time which can not exceed ten years, or without having warned the *creditor* [annuitant] a time before, which they shall limit. (emphasis added)

Although the wording of that provision is somewhat arcane, related provisions of the Louisiana Civil Code shed additional light on its meaning.

Article 2797, entitled "Compulsory redemption against debtor," permits the annuitant to compel the other party to redeem the annuity if that party (1) ceases fulfilling his obligations during three years or (2) fails to give the annuitant the securities promised by the contract. This provision is noteworthy for two reasons: First, rather than permitting an annuitant to redeem an annuity, it only permits an annuitant to *compel the other party,* i.e., the seller, to redeem the annuity; but second, and more importantly, it permits an annuitant to compel redemption *only* in situations that comport with

Louisiana's statutory definition of an annuity—i.e., when the other party either fails to pay the "rent" agreed upon or fails to perform his contractual duties.[16] Thus, even though article 2797 does not explicitly *prohibit* an annuitant from redeeming an annuity or from compelling redemption in circumstances other than those provided for in article 2793, we are not persuaded that, without further indication to the contrary, the redemption provision in article 2796 was intended by the Louisiana legislature to alter the basic principle that an annuitant, according to Louisiana's statutory definition, must relinquish at least some dominion and control over the account principle.

We find additional support for this conclusion in Louisiana's general definition of the "right of redemption," which, as applied to annuities, contemplates redemption only by the party who sold the annuity contract. The "right of redemption" is defined in article 2567, which states: "The parties to a contract of sale may agree that the *seller* shall have the right of redemption, which is the right to take back the thing from the buyer."[17] Thus, we agree with FCBT that the level of control retained by Guidry is a strong indication that—at least during the accumulation period—her account does not qualify as an "annuity" for purposes of exemption from seizure under Louisiana law.[18]

On the other hand, FCBT overstates its position by arguing that the Lincoln National account is nothing more than a thinly-disguised mutual fund. For example, unlike a mutual fund, the earnings of Guidry's account qualify for deferred income tax treatment.[19] In this and other respects, the

---

[16]*See* La. Civ.Code art. 2793.

[17]La. Civ.Code art. 2567 (emphasis added)(cross-referenced by La. Civ.Code art. 2796). The terminology, although somewhat counterintuitive, is logical if the transaction is perceived primarily as the sale of an annuity contract. The "buyer" is the "annuitant," and he is also considered the "creditor" because regular rents must be paid to him under the contract. Conversely, the "seller" is the "debtor," and his right to redemption is the right to "take back" his obligation to pay rents by returning the purchase price (the principal).

[18]Amicus Lincoln National's argument, that La.Rev.Stat. 22:647(D) is incompatible with our holding because it provides that "no person shall be compelled to exercise any rights, powers, options or privileges under" a life insurance or annuity contract, is flawed because it presupposes that Guidry's account is, in fact, an annuity. As § 22.647(D) applies only to life insurance and annuity contracts, and we conclude today that Guidry's account is not an annuity during its accumulation period for purposes of Louisiana's seizure laws, that statutory provision is inapposite.

[19]*See* 26 U.S.C. § 817.

account is more closely analogous to an Individual Retirement Account (IRA), albeit the IRA is a creature of Congress, not private industry as are annuities and mutual funds.

Amicus Lincoln National notes that IRA's are exempt from garnishment under Louisiana law even though the owner/investor retains significant control over his account, including the right of immediate access to the corpus of the account. Thus, argues Lincoln National, the fact that Guidry retains similar rights under the Lincoln National account should not preclude its protection from garnishment as an "annuity." A brief review of the history surrounding the exemption of IRA's under Louisiana law demonstrates the fundamental flaw in Lincoln National's logic.

In 1981, in *In re Talbert,*[20] a bankruptcy court ruled that IRA's were not exempt from seizure under Louisiana law. In so holding, the court noted the high potential for abuse that would result if a debtor were permitted to convert non-exempt funds into an exempt IRA and thereby avoid garnishment or attachment, despite the IRA's remaining freely revocable at the debtor's discretion. Two years later, in response to *Talbert,* the Louisiana legislature amended its statute to exempt IRA's from seizure.[21] In so doing, however, the legislature was careful to protect against the type of abuse envisioned by the bankruptcy court in *Talbert,* placing a low threshold cap on the amount of funds that may be shielded from creditors: IRA's are now exempt in Louisiana only "to the extent that contributions thereto were exempt from federal income taxation at the time of contribution, plus interest or dividends that have accrued thereon."[22] Thus far, the Louisiana courts have adopted a strict, literal interpretation of that limitation. Just last year, for example, an intermediate appellate court in Louisiana held that the statute exempts only tax-deductible IRA contributions plus accrued "interest or dividends," but that an IRA's *capital gains* are subject to seizure.[23]

---

[20]15 B.R. 536 (Bankr.W.D.La.1981).

[21]La.Rev.Stat. 20:33.

[22]*Id.* The Federal Bankruptcy Code treats IRAs differently than does Louisiana bankruptcy law, but it also embodies a protection against abuse. Under the Bankruptcy Code, any IRA is exempt from seizure, but only "to the extent reasonably necessary for the support of the debtor and any dependent of the debtor." *See Matter of Carmichael,* 100 F.3d 375 (5th Cir.1996).

[23]*Insurance Assoc., Inc. v. Francis Camel Constr., Inc.,* 673 So.2d 687, 690 (La.App. 1 Cir.1996).

It is at least conceivable that our opinion today might prompt the Louisiana legislature into action akin to that taken in response to *Talbert*—at least once those who lobby for the sellers of variable annuities receive this wake-up call.  And, as investing in variable annuities has become a widespread method of retirement planning and financial management, such investments might be deemed to be deserving of protection from seizure.  It is equally conceivable, however, that bank and creditors' lobbies might mount a counteroffensive.

Be that as it may, the instant appeal presents a situation in which financial innovation appears to have outstripped legal evolution.  We are convinced that the present state of Louisiana's exemptions from seizure cannot be stretched far enough to extend the exemption of traditional annuities to "variable annuities" of the kind exemplified by the Lincoln National account, at least not before the Maturity Date arrives and the annuity period clutches in.  For the duration of the accumulation period, the Lincoln National account simply fails to embody the fundamental characteristics of an "annuity" as that term is defined by the Louisiana Civil Code;  its creative features actually broaden the gap between it and traditional annuities.[24]

Moreover, in contrast to IRA's, Louisiana law does not presently limit the amount of funds that may be placed in annuities and thereby enjoy exemption from garnishment.  Although the Louisiana legislature may well enact new legislation exempting just such variable annuities from garnishment or attachment, we speculate that—in light of the IRA experience post-*Talbert*—the legislature is not likely to do so without, as a trade-off, imposing limitations on such exemptions.

As noted, in making our *Erie*-guess, we must attempt to predict state law, not to create or modify it.  Stretching beyond the statutory definition of an annuity to declare "variable annuities"

---

[24]We caution against an overbroad reading of this opinion, which addresses no question other than the eligibility of the particular product under scrutiny here, the defendants' Lincoln National account, for exemption from seizure under current Louisiana law, in light of the particular features that, during the accumulation period of the account, vest the owner with essentially unfettered power to control and recover previously contributed funds, principal among which are the powers of withdrawal and account termination.  Our confidence in the creativity and ingenuity of the industry satisfies us that if exemption from seizure is a desired feature, new products can and will be written so as to qualify for exemption, and existing products will be made to qualify by amendment or by irrevocable waiver or renunciation of features that, by virtue of this opinion, make such accounts ineligible for exemption from seizure during the accumulation period.

exempt from garnishment would require us to encroach on the exclusive province of the Louisiana legislature to create new law. Given Louisiana's Civil Law tradition of the primacy of legislation over jurisprudence, we are especially sensitive to our lack of authority to expand Louisiana's statutory definition of an "annuity" to include accounts over which investors retain virtually absolute dominion and control, including the right to withdraw any or all of the principal at any time. The potential for abuse is too great for us to decide cavalierly, and without clear support from Louisiana's statutes or case law, to shield the assets of such investment vehicles from creditors of the owner, particularly in the absence of ameliorating caps or other limitations on the quantum of such exemptions, such as those that the Louisiana legislature has imposed on IRA's.

B. "NEWLY DISCOVERED EVIDENCE"

1. *Standard of Review*

Absent a showing of a clear abuse of discretion, we will not disturb the district court's refusal to vacate or amend the judgment or grant a new trial on the basis of newly discovered evidence.[25]

2. *Tacking The Exemption of Life Insurance Proceeds*

Under Louisiana law, life insurance proceeds are exempt from garnishment to satisfy debts of the beneficiary that were already in existence at the time the insurance proceeds were made available for the beneficiary's use.[26] Guidry would now proffer "new" evidence that she purchased 35% of the Lincoln National account with proceeds from her late husband's life insurance policies. Furthermore, Guidry argues that such information qualifies as "newly discovered evidence" because her counsel did not interrogate her about such a possibility—and she did not inform her counsel of the origin of the funds of her own volition until shortly after trial. Therefore, Guidry argues, she is entitled to a new trial to prove that 35% of the Lincoln National account is exempt from garnishment because it was purchased with exempt proceeds of life insurance.

Under Fed.R.Civ.P. 59, a new trial may be granted on the basis of newly discovered evidence if "(1) the facts discovered are of such a nature that they would probably change the outcome; (2)

---

[25]*Diaz v. Methodist Hospital,* 46 F.3d 492, 495 (5th Cir.1995).

[26]La. Revised Statute 22:647(A).

the facts alleged are actually newly discovered and could not have been discovered earlier by proper diligence; and (3) the facts are not merely cumulative or impeaching."[27] We today join those of our fellow circuits that have recognized the rule that facts known to a party before trial, even though they were not disclosed to his attorney until after trial, need not be regarded as "newly discovered" facts for purposes of Rule 59.[28] Guidry complains that such a rule is unfair, as it operates to punish her for her counsel's failure to ask her all the right questions before trial. Although that may be one way of viewing the effects of the district court's ruling and our affirmance, we conclude that any loss by Guidry resulting from the professional deficiency in her attorney's failure to question her adequately when preparing her case for trial is a matter to be remedied between the two of them, not by putting FCBT and the district court through another trial.

Neither is a new trial required to prevent manifest injustice,[29] particularly when, as here, the defendants have not demonstrated a probability that the additional evidence they now proffer would have changed the outcome of the case. Even if we assume arguendo that (1) Mrs. Guidry could trace the origin of the funds used to purchase the account to the life insurance proceeds,[30] and (2) the exemption Louisiana law provides for life insurance proceeds would extend to property purchased with such proceeds, Guidry nevertheless would be entitled to little if any exemption. She has already withdrawn at least $178,325 from her account, and Guidry's own calculations show that, at most, only $171,500 of the account's principal might conceivably be exempt from garnishment as life insurance proceeds. Thus, it appears that Guidry has already withdrawn from her account almost $7,000 *more* than the amount she claims would be exempt.

---

[27]*English v. Mattson,* 214 F.2d 406, 409 (5th Cir.1954); *see also Diaz v. Methodist Hospital,* 46 F.3d 492 (5th Cir.1995).

[28]*See Roach v. Stastny,* 104 F.2d 559, 562 (7th Cir.1939)("[T]he court was not bound to order a new trial on the ground of newly discovered evidence in order to enable appellant to set forth facts within his own knowledge at the time of the trial, even though their existence may not have been known to his attorney then, and their significance was not known to himself.")

[29]*See Ferrell v. Trailmobile, Inc.,* 223 F.2d 697, 698 (5th Cir.1955).

[30]Guidry commingled the life insurance proceeds with other funds before using a portion of the commingled funds to purchase the Lincoln National account.

III

CONCLUSION

As we hold that, during its accumulation period, the Lincoln National account does not quality as an "annuity" for purposes of exemption from garnishment under applicable Louisiana law, the district court's grant of judgment pro confesso in favor of FCBT, and that court's denial of the defendants' motion to vacate or amend that judgment and grant a new trial, are in all respects

AFFIRMED.