### In re QUANALYZE OIL & GAS CORP., Debtor.

### No. 00–51001–C.

United States Bankruptcy Court, W.D. Texas, San Antonio Division.

June 8, 2000.

Danna Ciomperlik, pro se.

### Decision on Motion To Reconsider Order of Sale And Motion for Stay of Sale Order

LEIF M. CLARK, Bankruptcy Judge.

This case involves the implications of recent changes made the bankruptcy rules regarding § 363 sales of bankruptcy estate assets. In the past, an order authorizing a sale became final and effective immediately, and parties could close immediately unless an objecting party got a court order staying the sale. Now, thanks to changes to Rules 6004, 7062, and 9014, sale orders are stayed for 10 days—meaning that sales that close before that ten days expires could conceivably be unwound. This is a dramatic change in practice and procedure that may well have gone unnoticed by bench and bar, and its implications deserve examination. This case demonstrates some of the issues that might be expected to arise from this change in practice and procedure.

Danna Ciomperlik, a/k/a Danna de la Garza, has filed a motion to reconsider this court's order authorizing the sale of certain property of the estate, which this court entered on June 1, 2000. The motion to reconsider was filed June 2, 2000, the same day as the closing of the sale authorized by this court's order. Ms. Ciomperlik has also filed a motion to stay sale order on June 6, 2000, shortly after this court announced on the record on June 5, 2000 its intention to deny the motion to reconsider. The motion to reconsider came up on the record during the course of a hearing on the U.S. Trustee's motion to convert this case. An attorney representing another equity investor advised the court that the motion had been filed the previous Friday, suggesting the court should not convert the case until it first ruled on the motion to reconsider the sale.

### Background

To better understand this somewhat convoluted matter, we need to retrace a little history. This is the second chapter 11 filing by Quanalyze Oil & Gas Corporation within a year. The previous case was dismissed, but the new case was filed in just a few months. In this new case, creditors quickly moved for relief from stay or the appointment of a trustee, while the debtor just as quickly sought to sell various real estate holdings. In response to one motion for relief from stay, the debtor reached an agreement to market a 32 acre tract in Boerne, Texas, and to complete the sale before June 6, 2000. If the sale were not completed, then the creditor would be permitted to proceed to foreclose its mortgage on the property. Other creditors sought similar relief, and at a hearing on one of those motions, the court learned that the debtor's principal, James de la Garza, was the target of an arrest warrant, and that he was a convicted felon on parole. The court also learned of certain irregularities in one of the sales that had earlier been approved in this case, as well as discrepancies between the schedules filed in this case and in the previous case (assets had evidently been omitted from the schedules in the previous case). It also came out that an earlier sale authorized by the court involved part of a 1.5 acre tract that was in fact contiguous with the 32 acre tract, and integral to its value. The earlier sale thus impaired the saleability and value of the 32 acre tract. Fortunately, however, this sale had not yet closed. The debtor's principal had failed to disclose these facts to the court when it filed its motion to sell a part of this 1.5 acre tract. With all of these issues laid out on the record, it became obvious that immediate action needed to be taken to prevent abuse and preserve estate value.

Rising to the occasion, the U.S. Trustee orally moved for the appointment of a chapter 11 trustee, and the court granted that motion on the spot. After hurried consultation with all parties, the U.S. Trustee appointed John Patrick Lowe as Chapter 11 Trustee.

The chapter 11 trustee promptly filed a motion to set aside the order authorizing the sale of the portion of the 1.5 acre tract (it had not closed), and the court granted that motion. The chapter 11 trustee then sought to include the 1.5 acre tract at the same time as the 32 acre tract was to be sold. This request too was granted, and the court moved back the sale date for both tracts to give the chapter 11 trustee time to get up to speed, as well as to give other third parties a little more time to put together competing bids. In all events, the motions to sell still had to be considered before the first Tuesday in June, because the properties were scheduled for foreclosure as the result of earlier orders entered granting relief from stay to certain lenders.

The sale motion was heard on May 24, 2000, with full notice to all. Only one bidder came forward, and the chapter 11 trustee recommended that the sale be approved. The court determined that the sale was an arm's length transaction, and was being pursued in good faith. The sale was approved at that time. However, an order was not prepared and tendered for signature until June 1, 2000. The order was signed and docketed that very day. The following day, the seller and the chapter 11 trustee closed the sale. That same day (it is unclear whether it was before or after the closing), a motion to reconsider the sale was filed by one Danna Ciomperlik, alleged to be one of the debtor's equity security holders (though the schedules did not reflect her as an owner or equity interest holder). The motion was filed *pro se.*

The motion to reconsider was taken up on the record on June 5, 2000, at a hearing on the motion of the United States Trustee to dismiss or convert this case. Gershon Cohen entered an appearance on behalf of James de la Garza, the debtor's principal (the one being pursued on an arrest warrant) and an equity interest owner, advising the court of the pendency of the motion to reconsider. Mr. Cohen argued that the motion ought to be considered and ruled on before entertaining the U.S. Trustee's motion to dismiss or convert. According to Mr. Cohen, Ms. Ciomperlik was an equity interest holder of the debtor, and had a buyer ready, willing and able to purchase the estate property in question for a price in excess of the purchase price which the court had accepted at the hearing on the motion to sell the property.[1] Mr. Cohen suggested the court continue the hearing on the motion to convert because, if this "better offer" was accepted, the debtor might actually be able to reorganize and pay it creditors in full.

The trustee and the United States Trustee both opposed the request, stating that the sale had in fact already been consummated, that no stay of the sale had been sought, and that the purchaser could have, but did not, bid at the time of the hearing on sale. The court agreed, adding that, in its view, the failure to obtain a stay pending reconsideration of the motion was fatal. The consummation of the sale rendered the motion to reconsider moot, in the view of the court, and the court announced from the bench its intention to

---

1. The motion to sell was heard on May 24, 2000. At that time, a bidder presented a bid for $1,335,000. No other bidders came forward. The motion to reconsider states that Rathole Drilling, Inc. is ready, willing and able to pay $1,445,000 for the same properties. The motion further states that this sale offer is supported by earnest money in the amount of $150,000, and that the purchase price will be enough to pay all creditors in full. Rathole Drilling, Inc. did not present their offer to purchase on May 24, 2000, though a representative or agent of Rathole Drilling, Inc. was evidently in the courtroom at the time—this according to Ms. Ciomperlik.

deny the motion to reconsider.[2] The court then granted the motion of the United States Trustee to convert the case to chapter 7.

The following day, Ms. Ciomperlik filed a motion to stay order of sale, and requested that the court consider her motion in open court. The court placed the matter on the docket *sua sponte*, and considered the arguments of Ms. Ciomperlik. This motion disclosed (for the first time) that Ms. Ciomperlik is actually Danna de la Garza, *formerly known as* Danna Ciomperlik. She told the court that she was James de la Garza's wife.[3] She told the court that she filed the motion for stay after learning of this court's ruling (evidently from Mr. Cohen). She begged the court to reconsider the sale because she believed that this new offer would pay all creditors in full and allow her and her husband to preserve their equity interests[4] in the company. She said she had a cashier's check for $150,000 with her, and that the purchaser had lined up financing with Wells Fargo Bank.

After considering Ms. Ciomperlik's presentation, and after further review of the applicable law, the court concludes that it erred as a matter of law with regard to the stay issue, but did not err in its initial determination that the sale should not be reconsidered.

### Analysis

#### A. WHETHER THE SALE ORDER WAS STAYED

The order authorizing sale was entered on the docket on June 1, 2000. Until December 1, 1999, the Federal Rules of Bankruptcy Procedure provided that

> Rule 62 F.R.Civ.P. applies in adversary proceedings. An order ... authorizing ... the use, sale or lease of property of the estate under § 363 ... shall be additional [an] exception[ ] to Rule 62(a).

FED.R.BANKR.P. 7062 (pre–1999 version). Federal Rule 62(a) states that

> Except as stated herein, no execution shall issue upon a judgment nor shall proceedings be taken for its enforcement until the expiration of 10 days after its entry.

FED.R.CIV.P. 62(a). Rule 7062 was made applicable to contested matters by Rule 9014. Taken together, the rules operated to assure that a sale could be consummated by the parties immediately, and could only be forestalled by obtaining a very prompt stay from the bankruptcy judge. The rules mirrored the similar policy ex-

---

**2.** The court elaborated other reasons for its decision as well. The court noted that the tardy offer for sale would not furnish independent grounds for reconsideration anyway, because the bidder could have made its offer at the time of the sale hearing, but did not. Neither Rule 9023 nor 9024 afford a legal basis for setting aside an order authorizing sale when the competing bidder was not prevented from presenting its bid at the time of the sale. No new evidence that was not in fact available at time of hearing was alleged to be presented in the motion to reconsider. No fraud or other impropriety in the sale process was suggested in the motion. Thus, no independent grounds were urged that would have justified reconsideration. The court also adverted to the salutary policy of finality with respect to sales of estate assets, noting that promises of "a better offer" just around the corner often fail to materialize, and that such offers seldom afford grounds in equity for delaying asset sales. Indeed, entertaining such tardy offers on routine basis can

actually have a deleterious affect on estate administration—the court that entertains such offers may cause the estate to lose the original buyer, only to have the tardy buyer never to show up with the cash so that the asset has to be re-advertised, often resulting in a much lower sale price the second time around.

**3.** The court is surprised that Mr. Cohen, counsel for Mr. de la Garza, did not disclose this relevant piece of information to the court at the hearing on June 5, 2000. He seems to have misrepresented, by careful omission, the true state of affairs. That failure may have violated Rule 3.03 of the Texas Rules of Professional Conduct. *See* Texas State Bar Rules, art. 10, § 9, Rule 3.03(a)(1) and Comment 2, *reprinted in* Texas Rules of Court, at p. 400–01 (West pamphl. ed.2000).

**4.** The court addressed the question whether, in fact, Ms. Ciomperlik *had* an equity interest in the debtor. *See* discussion *infra*.

pressed in the statute itself, which states that a notice of appeal will not stay consummation of a sale unless a stay pending appeal is obtained. 11 U.S.C. § 363(m). If a party did not get a stay before the sale closed, either a reconsideration or an appeal would be rendered moot, because sale orders were excluded from the general rule that orders in contested matters are stayed for 10 days after their entry.

All of that changed on December 1, 1999, with an amendment to the bankruptcy rules that deleted all but the very first sentence of Rule 7062 (thereby deleting the "exception" to Rule 62(a) for, *inter alia,* sale orders), deleted reference to Rule 7062 in Rule 9014, and added a new paragraph to Rule 6004 (the rule governing asset sales). New subparagraph (g) now states that

> An order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 10 days after the entry of the order, unless the court orders otherwise.

FED.R.BANKR.P. 6004(g). The Advisory Committee Note to this rule states that this new paragraph was added "to provide sufficient time for a party to request a stay pending appeal of an order authorizing the use, sale, or lease of property under § 363(b) of the Code before the order is implemented." Advisory Committee Note (1999), FED.R.BANKR.P. 6004 (Norton Bankr.Rules Pamphl. 1999–2000 Edition—page 325). The Advisory Committee Note to Rule 7062 explains that

> [t]he additional exceptions to Rule 62(a) consist of orders that are issued in contested matters. These exceptions are deleted from this rule because of the amendment to Rule 9014 that renders this rule inapplicable in contested matters unless the court orders otherwise.

Advisory Committee Note (1999), RULE 7062, FED.R.BANKR.P. (Norton Bankr.Rules Pamphl 1999–2000 Edition, page 496). The Advisory Committee Note then adverts to specific amendments to other rules, including Rule 6004 (previously ref-

erenced), that "delay the implementation of certain types of orders for a period of 10 days unless the court otherwise directs." *Id.*

■ The bankruptcy rules have thus exactly reversed the procedures regarding the 10 day automatic stay of orders in contested matters. The general rule used to be that orders in contested matters were automatically stayed for 10 days because Rule 9014 made Rule 7062 applicable to contested matters, and Rule 7062 in turn incorporated Rule 62(a) of the Federal Rules of Civil Procedure, which sets out the automatic 10 day stay for judgments and other orders. The exception language in Rule 7062 then operated to *exclude* sale orders, lift stay orders, orders that authorized post-petition financing, and orders authorizing assumption and assignment of leases and executory contracts from the general "automatic 10 day stay" rule. Now, though, there is *no* automatic stay of *any* order in a contested matter as a general rule, an exact reversal of prior policy.

The prior policy on sale orders has also been reversed. Under the former rules, a sale order was *not* stayed for 10 days. Now, by virtue of the 1999 amendments, a sale order is *expressly* stayed for 10 days. The Advisory Committee Note says that Rule 6004(g) is designed to facilitate an objecting party's ability to obtain a stay pending *appeal,* thereby eliminating what had been the somewhat unseemly practice of chapter 11 debtors or bankruptcy trustees rushing to close a sale before an anticipated objecting party could get a court to enter a stay order. The language of the rule itself, however, is not limited by its terms to appeals. The rule now says that sale orders are stayed for 10 days, period (unless the court orders otherwise). *See* FED.R.BANKR.P. 6004(g).

■ What this means in this case, then, is that the estate and the buyer proceeded to a closing at their peril. The order upon which they relied was not yet final. No stay order was needed, because the sale

order was automatically stayed by operation of new Rule 6004(g) of the Federal Rules of Bankruptcy Procedure. The court can indeed entertain the motion to reconsider, and should it grant that motion within the ten day window afforded by Rule 6004(g), the sale order can be set aside—and with it the sale itself! No end of litigation could then be instigated, involving an angry buyer, a frustrated lender or two, a nervous chapter 11 trustee (and his bonding company), and a skittish title company.

In any event, Ms. Ciomperlik did not need to file her motion to stay sale order, because it was already stayed as a matter of law. Her motion for stay was only filed to make sure that her motion to reconsider could be ruled on before the sale became irrevocable. By this decision, the court is in fact ruling on the motion to reconsider, so her motion for stay is unnecessary. It will be dismissed as moot.

B. THE MOTION TO RECONSIDER

The court noted on the record during the course of entertaining the oral motion for continuance urged by Mr. Cohen that it did not believe the motion to reconsider was well taken in any event, wholly apart from the stay issue. Nothing in the court's more searching examination of the motion, or Ms. Ciomperlik's statements to the court, have changed this court's mind. Indeed, if anything, the court is even more convinced that granting the motion to re-

consider would be ill-considered, and would set a dangerous precedent for future bankruptcy sales.

Ms. Ciomperlik's motion faces a daunting challenge at the outset. For before even reaching the merits of the motion, the court is obligated to satisfy itself that she even has standing to urge the motion. *In re Cult Awareness Network, Inc.,* 151 F.3d 605, 607 (7th Cir.1998). Standing is always important, going as it does to the court's subject matter jurisdiction, but it is especially important that only parties with standing be able to object to bankruptcy sales, for few things could more thoroughly undermine the sale process in bankruptcy than the prospect of strangers to the transaction having the ability to file papers to interfere or frustrate the sales process.[5]

A competing bidder normally lacks standing to even challenge a sale, much less seek reconsideration of an order approving sale. *In re HST Gathering Co.,* 125 B.R. 466, 468 (W.D.Tex.1991).[6] In this case, it is not actually the *bidder* seeking to challenge the sale, but a purported equity interest owner, advancing the interests of that bidder. Yet here too, standing can be a problem, for equity interest owners must demonstrate that they have a pecuniary interest in the outcome of the matter to have standing, and that usually means making at least a prima facie showing that there is enough value in the estate to pay all creditors in full and have enough left

---

5. "Strangers" might include frustrated competing bidders, competitors of either the successful bidder or the bankruptcy debtor, or insiders or family members bent on derailing the process in order to exploit an advantage. All such persons would love nothing better than the leverage that can come from litigation delay and expense, so barring such parties from being able to upset sales with frivolous pleadings designed to obtain such leverage is essential. *See In re NEPSCO, Inc.,* 36 B.R. 25 (Bankr.D.Me.1983) (purpose of the statutes authorizing sale of bankruptcy estate assets would be hindered not furthered by permitting a stranger to the estate to object to the sale).

6. The court observed that bidders are not within the "zone of interests intended to be protected" under the bankruptcy statutes. *Id.,* citing *In re Planned Systems, Inc.,* 82 B.R. 919, 922 (Bankr.S.D.Ohio 1988); *Big Shanty Land Corp. v. Comer Properties, Inc.,* 61 B.R. 272, 277 (Bankr.N.D.Ga.1985). There are narrow exceptions, primarily designed to afford a fair opportunity for the courts to police the integrity of the sale process. *See, e.g., Kabro Assoc. of West Islip, LLC v. Colony Hill Assoc. (In re Colony Hill Assoc.),* 111 F.3d 269 (2nd Cir.1997) (unsuccessful bidder accorded standing, in order to expose collusion that undermined the intrinsic fairness of the sale transaction).

over to pay a dividend to owners. *See In re Cult Awareness Network, Inc., supra.* "If the debtor [or equity interest owner] can show a reasonable possibility of a surplus after satisfying all debts, then the [equity interest holder] has shown a pecuniary interest and has standing to object to a bankruptcy [sale] order." *Id.,* at 608, citing *In re Andreuccetti,* 975 F.2d 413, 417 (7th Cir.1992). In this case, the movant contends that she has an offer in hand that, if accepted, would pay creditors in full, a representation that is probably sufficient to satisfy the solvency aspect of the burden.[7]

What the movant failed to do, however, was to establish the basis for her claim to in fact be an equity interest owner of the debtor. To hold an actual pecuniary interest, she must first hold an interest. No proof of interest was ever filed reflecting her alleged ownership interest. The bankruptcy schedules do not show her to be an owner either. At the hearing on the motion for stay of sale order, Ms. Ciomperlik represented that her equity interest in the estate derived from her status as spouse of James de la Garza—entitling her (she said) to a one-half community interest in the company. She added that, according to her husband (who is currently incarcerated in a Corpus Christi jail) stock certificates were "to be issued" memorializing her interest, but that had not yet been done. Clearly the burden was on Ms. Ciomperlik to prove her status as owner, and this she failed to do. The business records of the company were not furnished, nor were any resolutions to memorialize her alleged equity interest. No stock certificates were presented. Moreover, her statements were inconsistent with what the bankruptcy schedules showed, casting considerable doubt on her representations. The court

is inclined to conclude that the motion to reconsider fails for lack of standing on the part of Ms. Ciomperlik.

■ Even if she did have standing, however, the motion should still not be granted. Whether this motion is construed to be a motion to alter or amend judgment under Rule 9023 or motions to set aside judgments under Rule 9024, *see In re El Paso Refinery, L.P.,* 244 B.R. 613, 618 (Bankr.W.D.Tex.2000), it is entirely inappropriate, under the circumstances of this case, to disturb an order authorizing sale solely on the grounds that a "better offer" has since materialized.

Rule 9023 makes Rule 59 applicable in bankruptcy cases. That rule permits a court to revisit a judgment or other final order entered in a matter tried to the court "for any of the reasons for which rehearings have heretofore been granted in suits in equity in the courts of the United States." FED.R.CIV.P. 59(a). Those grounds are normally considered to be newly discovered evidence or manifest errors of law or fact. *See Matter of Aguilar,* 861 F.2d 873, 875 (5th Cir.1988); *see also In re Kellogg,* 197 F.3d 1116, 1119 (11th Cir.1999). There is a three-prong test generally employed for determining whether "newly discovered evidence" furnishes grounds for a new trial: (1) the probability that the evidence would have changed the outcome of the trial; (2) whether the evidence could have been discovered earlier through the moving party's due diligence; and (3) whether the evidence is merely cumulative or impeaching. *See Farm Credit Bank v. Guidry,* 110 F.3d 1147, 1155 (5th Cir.1997); *Diaz v. Methodist Hosp.,* 46 F.3d 492, 495 (5th Cir.1995). Here, Ms. Ciomperlik acknowledged that,

---

**7.** We say "probably" because in fact no evidence was taken on the motion to reconsider. Ms. Ciomperlik was present in open court, and made this representation on the record, but there was no one to cross examine her on this point (the stay motion was heard by the court *sua sponte* without notice to other interested parties), and she furnished the court

with no independent corrobative evidence. The motion, however, recited that $1.445 million would be sufficient to pay all creditors in full, and that representation must pass muster under Rule 9011. The court has elected to give the movant the benefit of the doubt on this point.

in fact, there was present in court on the day of the hearing a person who could have come forward to advise the court of the existence of this competing bid, but who failed to do so. The evidence of a competing bid was thus available earlier and could have been "discovered" through the moving party's due diligence.[8] *See In re Investors Florida Aggressive Growth Fund, Ltd.*, 168 B.R. 760, 768 (Bankr. N.D.Fla.1994). The moving party has thus failed to satisfy one of the three necessary prongs for obtaining a new trial on grounds of newly discovered evidence.

Nor can the court discern any other error in fact or law in the court's decision to proceed with the sale in the manner it did. The court set a deadline for bidders to come forward, and creditors had ample opportunity to seek out interested bidders to participate in the process. If a sale was not completed before the end of May, the estate would lose the property to foreclosure by secured lenders. Notice was given to all creditors and parties in interest, including Mr. de la Garza (who, it must be remembered, *initiated* the sale process months before a chapter 11 trustee was appointed). At the hearing, the court went out of its way to ask whether there were competing bids—unaware at the time that, in fact, the agents of the entity with the "better offer" were in court, keeping silent (evidently because they did not have any earnest money with them). No one came forward, the court confirmed that the proposed buyer was unrelated to the debtor or any other party in the case, asked for the recommendation of the chapter 11 trustee, then concluded that the sale should be approved. No error is apparent

in the process employed by the court, and none is suggested by the movant here.

Indeed, the *only* basis urged for setting aside the sale offer is the representation that there is now—after the fact—a "better offer" that has since materialized. The court concludes that this is an insufficient ground to justify granting a new trial of a motion to sell estate assets. If such sales are to have any finality at all (and if bidders are to be encouraged to participate in sales), the procedure employed must be both transparent and reliable. Were parties permitted to run in bids after the close of sale hearings, then bidders themselves would quickly realize that they were being used as a stalking horse, while other bidders waited for the stalking horse to set the price range, before committing themselves to a bid. Of course, such bidders would not bid what they think the property is worth—they would only bid a little more than what someone else thinks the property is worth. They would thus take advantage of both other bidders and the bankruptcy estate, waiting until after the close of the sale to then come in with another higher bid—but only a little bit higher.[9] Far from being in the estate's best interests, that would be in the estate's *worst* interests.

■ What would a court be expected to do were it to *grant* a motion to alter or amend based on an untimely "better offer?" Would it revoke the order of sale and enter an amended order, awarding the property to the competing bidder? Would it set aside the sale entirely and reset the motion to sell? Would it ask for further bid solicitation? What if the second bidder

8. The equity interest owners certainly had a vested interest in bringing competing bidders to the table by the deadline set by the court—and had plenty of advance warning. They cannot miss the deadline for bringing a qualified bidder to the table, then claim that their competing bid is "newly discovered evidence." That is not "due diligence" in the context of a sale motion.

9. Indeed that appears to be what has taken place here. The motion to reconsider represents that the property in question is actually

worth $2.5 million. The new bid offered as grounds for reconsideration comes nowhere near that mark, however. Instead, it exceeds the bid the court accepted at the sale hearing by exactly $100,000—just enough to be significantly more. One suspects that Rathole Drilling, Inc. elected to wait to make sure that no other bidders materialized, and then waited for the order to be entered approving the sale. It then (this court suspects) set its bid based on the only other bid outstanding.

then melted away? Would the court be able to go back to the first bidder? Could the first bidder be compelled to complete the sale? These questions are their own answer—finality in bankruptcy sales is second in importance only to fairness in such sales. A lack of finality in sale procedures will lead ineluctibly to fewer successful sales and greater difficulty in attracting real buyers. A lack of finality also invites collusive bidding activity and insider maneuverings. Public policy militates against granting new trials of sale motions based solely on new bids that appear after the close of the sale procedure.[10]

The other basis for setting aside an order might be Rule 9024, which incorporates Rule 60(b) of the Federal Rules of Civil Procedure. *See* FED.R.BANKR.P. 9024. This rule provides even less support for reexamination of the order approving sale than does Rule 9023. There are six grounds offered in Rule 60(b) for relief from a judgment or order, and *none are* implicated here. The motion does not allege mistake, inadvertence, suprise or excusable neglect. It does not disclose new evidence "which by due diligence could not have been discovered in time to move for a new trial under Rule 59." *See* FED. R.CIV.P. 60(b). It does not accuse anyone

of fraud or other misconduct. It does not suggest that the order is for any reason void. The grounds described in Rule 60(b)(5) do not even apply to sale orders. Finally, the catchall "any other reason justifying relief from the operation of the judgment" runs directly into the teeth of the public policy that militates *against* disturbing final sale orders—especially when the ground for doing so is an alleged "better offer." Rule 9024 thus gives no stronger basis for setting aside the sale order than did Rule 9023—and we have already found that the sale order should not be set aside pursuant to Rule 9023.[11]

### Conclusion

The court readily acknowledges that it misstated the current state of the law on the record when it considered the motion to dismiss or convert this case. There was, in fact, no requirement that a party seeking reconsideration of a sale order first obtain a stay, to prevent the sale from being consummated and rendering the motion moot. The bankruptcy rules now provide that sale orders are automatically stayed for 10 days. *See* FED.R.BANKR.P. 6004(g). This is an exact reversal of prior law, and applies regardless whether an objecting party is seeking to appeal a sale order or is seeking instead a reconsidera-

---

**10.** The Advisory Committee does not address the issue directly, but its comments *do* suggest that it was never the intention of the Judicial Conference, in drafting new Rule 6004(g), to open the door to post-hearing bidding. The stated purpose of affording the 10 day stay with respect to sale motions was to give objecting parties enough time to approach the court for a stay pending appeal, in order to attack a sale *on appeal*. We already know that, by statute, an appeal of a sale order will normally only lie if the sale procedure itself was fraudulent. *See* 11 U.S.C. § 363(m). A party seeking to obtain appellate review of just such a sale should not find its efforts frustrated by a "quick closing" that renders an appeal moot. The Advisory Committee's solution for one sort of abuse should not be read to have created an opportunity for another sort of abuse.

**11.** The motion to reconsider does not raise any suggestion that the underlying sale hearing was in any way flawed. The motion had

been on file for nearly 60 days. Every creditor was aware of it. The equity interest owner or owners were certainly aware of the motion because it was originally filed at their behest in response to a motion for relief from stay by a lender. The owner or owners are (or were) also the officers of the company, who acted on its behalf and who were the primary contact persons with the estate's chapter 11 lawyer. At the sale hearing itself, the court specifically asked in open court whether there were any competing bids, waited some minutes for a response, and expressed surprise that there were not competing bids. The party complaining is the wife of the one person who was in the *best* position to bring in other bidders. The circumstances strongly suggest that, in fact, it was Mr. de la Garza who found the competing bidder and who may well have advised him to lay in the weeds until after the sale hearing was closed, hoping perhaps to further delay the ultimate disposition of the property by dangling a "tempting carrot" before the judge's nose.

tion of the sale order by the trial court. The motion for entry of stay is moot, because as a matter of law, it was unnecessary in the first place. The sale order is, to date, stayed by operation of Rule 6004(g), and the motion to reconsider is thus not moot.

However, the fact that the sale order is still amenable to reconsideration makes no real difference in this case, because the court has concluded that the appearance post-hearing (and post entry of order) of a "better offer" does not constitute grounds for reconsidering a sale order under either Rule 9023 or 9024. The motion to reconsider is denied.

Rule 6004(g) does provide that a court may in its discretion shorten or even eliminate the ten day stay. Given that the sale in this case has already been consummated, and further given this court's disinclination to entertain reconsideration of the order that approved that sale, the right thing to do in this case is to terminate the stay. That is what shall be done here.

Orders will be entered consistent with this decision.