**In re NEPSCO, INC., Debtor.**

**Bankruptcy Nos. 183–00253, C7–31003**

United States Bankruptcy Court, D. Maine.

Dec. 14, 1983.

FDIC has an adequate forum to adjudicate the matters raised by its counterclaim in either the state or federal courts.

Stephen Morrell, Eaton, Peabody, Bradford & Veague, Bangor, Me., for debtor.

Robert S. Lingley, C.W. & H.M. Hayes, P.A., Dover-Foxcroft, Me., trustee for NEPSCO.

Daniel P. Amory, Drummond, Woodsum, Plimpton, Portland, Me., for trustee.

P. Benjamin Zuckerman, Verrill & Dana, Portland, Me., Charles P. Normandin, Ropes & Gray, Boston, Mass., for Talma, Inc.

Gregory A. Tselikis, Bernstein, Shur, Sawyer & Nelson, Portland, Me., for R.I.F.

MEMORANDUM OF DECISION

JAMES A. GOODMAN, Bankruptcy Judge.

On September 30, 1983, the debtor filed in this court a chapter 7 petition. On October 6, 1983, Talma, Inc. a secured creditor, filed a motion for relief from stay. The trustee and Talma, Inc. filed on October 24, 1983 a joint application to compromise the motion for relief from stay as well as certain claims asserted by the trustee against Talma, Inc. The compromise contemplated the settlement of the trustee's claims against Talma, the sale of Talma's secured

claim to CII, Inc. (an unrelated third party), and the sale of substantially all the debtor's assets to CII, Inc. Notice of the compromise and of the proposed sale was given to all parties in interest, including all creditors, calling for objections to be filed on or before November 9, 1983. Objections were filed, alleging in general that (1) assets were being sold that were subject to claims of reclaiming creditors; and (2) Talma, Inc.'s claim should be equitably subordinated to the claims of unsecured creditors. A hearing was held on November 14 and 15, 1983. At the conclusion of the hearing, the reclaiming creditors agreed that the compromise and sale would preserve their claims for later determination by the Court. They therefore agreed to both withdraw their objections, and file a stipulation shortly thereafter. Based on the uncontroverted evidence before it, the Court determined that the objections involving equitable subordination were without merit. However, the Court deferred entering its order awaiting receipt of the promised stipulation.

On November 23, 1983, an objection to the compromise and application to sell was filed by R.I.F. on the grounds that R.I.F. intended to submit on or about November 28th a competing bid to the trustee which would be of greater benefit to the estate than the compromise. A hearing on this objection was held on November 28.

The Court has serious questions concerning R.I.F.'s standing to object to the proposed compromise and sale. "[T]he federal judiciary has ... adhered to a set of prudential principles that bear on the question of standing. ... [T]he Court has required that the plaintiff's complaint fall within 'the zone of interests to be protected or regulated by the statute or constitutional guarantee in question.' " *Valley Forge Christian College v. Americans United For Separation of Church and State, Inc.,* 454 U.S. 464, 474–75, 102 S.Ct. 752, 759–60, 70 L.Ed.2d 700 (1982) (quoting *Association of Data Processing Service Orgs. v. Camp,* 397 U.S. 150, 153, 90 S.Ct. 827, 829, 25 L.Ed.2d 184 (1970)); *see Munoz-Mendoza v. Pierce,* 711 F.2d 421, 425 (1st Cir.1983); *United States v. Abell,* 552 F.Supp. 316, 318 (D.Me.

1982). In this case, R.I.F. is not a creditor of the estate. Its only interest in this proceeding is that it wishes to purchase certain assets of the estate. Thus, the Court turns to the language of the relevant statutes and rules as well as their legislative history to determine whether R.I.F. is one intended to be protected or regulated thereunder. *See Control Data Corp. v. Baldridge,* 655 F.2d 283, 293–94 (D.C.Cir.), *Cert. denied,* 454 U.S. 881, 102 S.Ct. 363, 70 L.Ed.2d 190 (1981); *Window Systems, Inc. v. Manchester Memorial Hospital,* 424 F.Supp. 331, 336 (D.Conn. 1976).

The statutes and rules governing sales by trustees appear to be designed to protect the estate, not potential purchasers. Title 11 U.S.C. § 363(b) provides that the trustee may sell property of the estate, other than in the ordinary course of business, "after notice and a hearing." Bankruptcy Rule 6004(a) requires notice be given to the debtor, trustee and all creditors, in order that they may object to the proposed sale. Unlike former Bankruptcy Rule 606(b)(2), which required that sales be by public auction unless otherwise ordered by the Court, current Bankruptcy Rule 6004(e)(1) provides that *all* sales not in the ordinary course of business may be private or by public auction. If the sale is private, all creditors receive notice of the terms and conditions of the sale and the time fixed for filing objections. Bankruptcy Rules 6004(a); 2002(c)(1). If no objections are filed, the trustee may proceed with the sale without either a hearing or a court order. *See* 11 U.S.C. § 102(1)(B); *In re Hanline.* 8 B.R. 449, 450, 7 B.C.D. 256, 257 (Bkrtcy. N.D. Ohio 1981). Clearly, the thrust of this statutory scheme is to provide maximum flexibility to the trustee, subject to the oversight of those for whose benefit he acts, *i.e.,* the creditors of the estate. This scheme also promotes Congress' intent of keeping bankruptcy judges out of the administrative aspect of bankruptcy cases, since the Court no longer supervises sales as it did under the repealed Bankruptcy Act. *See* H.R.Rep. 95–595, 95th Cong., 1st Sess. (1977) 4, 89–91, U.S.Code Cong. & Admin.

News 1978, p. 5787; *see also Berg v. Scanlon (In re Alisa Partnership),* 15 B.R. 802, 802, 5 C.B.C.2d 967, 968, (Bkrtcy.D.Del. 1981). *Compare* 11 U.S.C. § 110(f) (1976) (repealed) *with* 11 U.S.C. § 363(b). The Court finds nothing to indicate that prospective purchasers are within the zone of interests intended to be protected through this statutory scheme. The purposes of these statutes would be hindered, not furthered, by permitting a stranger to the estate to object to a sale to which no party in interest objected.[1] *See Zaccaro v. Bowery Savings Bank (In re Jewel Terrace Corp.),* 10 B.R. 1008, 1011–12, 4 C.B.C.2d 847, 851–52 (E.D.N.Y.1981).

In analogous circumstances, courts have precluded unsuccessful bidders from challenging allegedly improper government contract awards where no specific legislation authorized such a challenge. *See Coyne-Delany Co., Inc. v. Capital Development Board of the State of Illinois,* 616 F.2d 341, 342–43 (7th Cir.1980). In *Perkins v. Lukens Steel Co.,* 310 U.S. 113, 60 S.Ct. 869, 84 L.Ed. 1108 (1940), the Supreme Court found that an unsuccessful bidder had no standing despite a statute which required all purchases and contracts for supplies or services to be made only after public advertising. The Court stated that the statute "was not enacted for the protection of sellers and confers no enforceable rights upon prospective bidders." *Id.* at 126, 60 S.Ct. at 876 (footnote omitted). Similarly, the Court finds in this case that the relevant bankruptcy statutes and rules were not enacted to protect prospective bidders like R.I.F.[2]

Even assuming, however, that R.I.F. does have standing to object, the Court would not sustain the objection. R.I.F. argues that the trustee did not widely advertise the sale of the debtor's assets, and that its offer to purchase the debtor's assets would produce a significantly greater benefit to the estate than the proposed compromise and sale. An analysis of the competing offers fails to support R.I.F.'s position.

Talma, Inc. asserts a claim in the amount of $4,710,723 secured by substantially all of the debtor's assets. The net liquidation value of debtor's assets would be, at most, $3,874,000. Thus, there is no equity in the estate in those assets. The trustee asserts preference claims which, if successful, would net the estate approximately $220,-000, and also challenges the perfected status of Talma's security interest in assets worth approximately $330,000. The main features of the compromise are (1) the assets are to be sold for $2,750,000 to CII, Inc.; (2) Talma, Inc. will immediately receive $2,525,000 in full satisfaction of its claims (thus waiving a potential unsecured

---

1. A similar analysis applies to the statutory scheme for approval of a compromise. Bankruptcy Rule 9019(a) provides that the court may approve a compromise after a hearing on notice to creditors, the debtor, the trustee and other persons as the court may designate. The standard the court applies in determining whether to approve a compromise is whether it is in the best interests of the estate. *Knowles v. Putterbaugh (In re Hallet),* 33 B.R. 564, 565 (Bkrtcy.D.Me.1983).

2. The specific holding in *Perkins* that unsuccessful bidders are without standing has been challenged. In *Scanwell Laboratories, Inc. v. Shaffer,* 424 F.2d 859 (D.C.Cir.1970), unsuccessful bidders were found to have standing in order to assert the public interest in preventing the granting of government contracts through arbitrary or capricious action. *Id.* at 864; *see Merriam v. Kunzig,* 476 F.2d 1233, 1240 (3d Cir.1973). The public's interest in preventing the arbitrary or capricious granting of government contracts seems clear—the government acts on behalf of the public, and generally purchases goods and services with tax dollars. The public's interest in protecting the debtor's estate, however, is hard to discern. The public does not appear to be directly affected by a sale of a debtor's assets. Nor is there any need to grant prospective purchasers standing in bankruptcy cases to assert the rights of affected third persons. While in government contract cases a member of the public might well not have standing to contest the contract award, no obstacle exists to the affected third parties in bankruptcy cases (*i.e.,* the creditors of the estate) from asserting their own rights. *Cf. Bowman v. Wilson,* 672 F.2d 1145, 1152–53 (3d Cir.1982) (an exception to zone of interest test in constitutional challenges exists to allow injured person to assert constitutional rights of a third party, but the exception applies only if there is some obstacle to the third party asserting his own rights).

claim of at least $1,800,000, which would constitute 35% of all unsecured claims); and (3) the estate receives $225,000. Counsel for Talma, Inc. represented to the Court that its consent to the compromise was in large part based upon the *immediate* payment of $2,525,000.

R.I.F. proposes to pay the same $2,750,000 to Talma, Inc. and the estate as well as to split its profits in liquidating the assets with the estate. However, Talma would not be paid until the expiration of the appeal period or the conclusion of any appeals. At the hearing, Talma, Inc. refused to agree to this proposal unless R.I.F. would make immediate payment to it. R.I.F. refused to accept this condition.

In determining whether the joint application to compromise should be approved, the Court must determine if it is in the best interests of the estate. Factors to be considered include the probability of success of litigation and the paramount interests of the creditors. *See Knowles v. Putterbaugh (In re Hallet)*, 33 B.R. 564, 565 (Bkrtcy.D.Me.1983). Here, without Talma's cooperation, it will make no difference to the estate whether the estate assets are liquidated for $2,750,000 or $4,250,000—Talma's secured claim would exceed either figure. While R.I.F. contends that Talma could be compelled to accept its offer, the trustee represents, and the Court agrees, that there is substantial doubt on that issue.[3] As stated above, all creditors were given notice of the November 14th hearing, and none objected to the manner in which the trustee arranged the sale. While not all creditors received notice of the November 28th hearing, most of the creditors who appeared at the November 14th hearing also were represented at the November 28th hearing. While given several opportunities to support R.I.F.'s objection, none did so. It seems clear to the Court that the

trustee and the creditors who attended the hearing preferred not to jeopardize the assured benefits of the compromise with Talma, Inc. by supporting R.I.F.'s relatively risky proposal. After considering the evidence before it, the Court agrees that the compromise is in the best interests of the estate. The objection of R.I.F. is dismissed.[4]

---

**3.** Talma, Inc. could forcefully contend that because it agreed to compromise its $4,710,723 claim for $2,525,000 in return for *immediate* payment, it could not later be compelled to compromise its claim for less than it bargained for (*i.e., delayed* payment of the $2,525,000). The Court need not decide this issue in order to

find that the outcome of litigation on that issue would be, at best, uncertain.

**4.** The Court's order approving the compromise and allowing the sale was entered on November 28, 1983.