**In re LEBLANC INC., Debtor.**

**No. 99–01033S.**

United States Bankruptcy Court,
N.D. Iowa,
Western Division.

Aug. 6, 2003.

Dale Ardizzone, Glenayre Technologies, Inc., Charlotte, NC, Robert J. Bothe, Omaha, NE, Jeffrey W. Courter, Des Moines, IA, Michael J. Darlow, Perdue, Brandon, Fielder, Collins & Mott, L.L.P., Houston, TX, Norman K. Droste, Traverse City, MI, Brad C. Epperly, West Des Moines, IA, Richard E. Fehling, Reading, PA, Steven B. Flancher, Lansing, MI, Frank W. Frasier, Tulsa, OK, Anne Jorgenson Green, Special Assistant Attorney General, Bismarck, ND, Steven R. Jensen, Sioux City, IA, Alan M. Koschik, Cleveland, OH, Christine A. Kosydar, Stoel, Rives LLP, Portland, OR, Michael P. Mallaney, Des Moines, IA, Jamison Poindexter Milford, U.S. Dept. of Labor, Kansas City, MO, Rebecca A. Nelson, Sioux City, IA, Vincent F. O'Flaherty, Kansas City, MO, Jeffrey L. Poulson, Al Sturgeon, Sioux City, IA, Donald Swanson, Omaha, NE, Jesse S. Vogtle, Jr., Birmingham, AL, Frank Wendt, Mary D. Wright, Kansas City, MO, for Creditors.

A. Frank Baron, Sioux City, IA, for Debtor.

Donald H. Molstad, Sioux City, IA, Ronald Peterson, Chicago, IL, for Trustee.

## MEMORANDUM DECISION RE: TRUSTEE'S MOTION TO SELL FREE OF INTERESTS AND SALE

WILLIAM L. EDMONDS, Bankruptcy Judge.

The chapter 7 trustee asks to sell real property free of any lien for unpaid, delinquent real estate taxes. Sabre Communications Corporation (hereinafter "Sabre"), a tenant of the property, objects. Hearing on the motion was held July 29, 2003 in Sioux City. Wil L. Forker appeared on his own behalf as the chapter 7 trustee. Rebecca A. Nelsen appeared as attorney for Sabre. Steven R. Jensen appeared as attorney for Absolute Investments, L.L.C., the proposed buyer (hereinafter "Absolute").

The trustee filed his motion to sell free of liens on May 23, 2003. He served the motion on creditors and parties-in-interest. He also served notice of filing the motion including notice of a bar date for objections and notice of hearing. I was unable to locate Sabre in the mailing matrix attached to the proofs of service. Sabre, however, timely filed objection to the sale.

The trustee proposes to sell the real property hereafter described to Absolute for $642,500.00:

Lot Four (4) and the West One Hundred Thirty-eight and Three-tenths (138.3) Feet of Lot Three (3), "Bridgeport Industrial Park", an Addition to Sioux City, Woodbury County, Iowa, except the following described tract: Beginning at the Northwest corner of the said Lot 4; thence South 053.5' East, 80 feet along the West line of the said Lot 4; thence North 643.0' East, 80.7 feet to a point on the North line of the said Lot 4; thence South 890.6.7' West, 10.7 feet

along the North line of the said Lot 4 to the point of beginning.

The property was not property of the estate when debtor filed its chapter 11 petition in 1999, nor was it when the case converted to chapter 7 in May 1999. It was transferred to the bankruptcy estate by LRX, Inc., the debtor's parent company, as part of a settlement agreement that was approved by the court in May 2002. Sabre was a tenant of the property prior to the transfer to the bankruptcy estate. Its three-year lease was to expire on October 31, 2002. The trustee and Sabre agreed to extend Sabre's tenancy on a month-to-month basis after that date. It was also agreed that either party would be required to give four months' notice of termination of the tenancy.

During December 2002, the trustee entered into a contract with Salem Commercial, a division of United Real Estate Solutions, Inc., hiring Salem Commercial as broker for the sale of the real estate. The contract was presented to the court in early February 2003, and approved February 10. Dick Salem, on behalf of Salem Commercial, conducted the sales effort. He advertised the property on the broker's web site, listed it on multiple listing service, and mailed brochures on the property to various businesses. He listed the property with other commercial brokers, and made phone calls to potential buyers. He contacted Sabre and left a message for James Mack, Sabre's president, saying that if Sabre had any interest in the property, someone should call him. No one did. Salem testified that he played golf with Baily Aalfs, the founder of Sabre, and discussed with him any interest Sabre might have in buying the property. Salem was told that Sabre was not interested.

The property is located in Sioux City's Bridgeport Industrial Park at 2301 Bridgeport Drive. It contains 7.03 acres and two buildings. It has been appraised twice as part of the trustee's settlement with LRX, Inc., debtor's parent company. The trustee obtained an appraisal of $1,000,000.00. The debtor's parent company obtained an appraisal showing a value of 1.4 million dollars. Salem listed the property at an asking price of about 1.3 million dollars.

Salem testified that the property has few potential buyers. He said he expected the property to sell for between $700,000.00 and one million dollars. One problem affecting value is the short term lease with the tenant. Salem testified that if there were a long term lease in place, it would enhance the value of the property. He believes that a user-purchaser would be difficult to find. It also could take some time for an investor-purchaser to find a tenant.

As a result of Salem's efforts, an offer was submitted to the trustee by Absolute. Its initial offer was $600,000.00. The trustee made a counter offer of $800,000.00. On or about May 1, 2003, Absolute offered $642,500.00, and the trustee accepted subject to court approval. Prior to filing his motion and serving notice of sale, trustee contacted the estate's largest unsecured creditor and ascertained that it had no objections to the sale.

Absolute and trustee have agreed to close the sale within 30 days of receiving court approval. John Daniels, the managing partner of Absolute, says the company has conducted its due diligence inquiry, has obtained approval of its financing, and has arranged for an environmental evaluation of the property to be sent to its lender. He says the lender has received the evaluation. Daniels does not know the results of the evaluation, but says that the lender does, and his contact person at the lender says the bank is ready to go forward. Absolute, at its own expense and

with the permission of the trustee, has protested the property's valuation for real estate tax assessment, and has succeeded in having the valuation lowered. Absolute's lender for the sale has obtained an appraisal for the property which Daniels said was $850,000.00. Daniels testified that in his opinion Absolute would be ready to close once the ten-day appeal period on the court's order had expired, but certainly within 30 days.

The trustee filed his motion to sell and served notice of the sale on May 23, 2003. Sabre filed its objection to the sale on June 11, 2003.

Sabre objects to the sale to Absolute, contending that $642,500.00 is not the highest and best price available for the property. It says other buyers would be willing to offer more. On July 11, 2003, Sabre notified the trustee that it would be making an offer on the property in the amount of $667,500.00. The formal offer in that amount was conveyed to the trustee on July 16. Sabre's offer set the closing deadline as October 15, 2003. The offer provided that trustee would provide Sabre with a groundwater hazard statement, and that buyer could obtain an environmental evaluation at its expense within 75 days after acceptance of the offer.

Scott Aalfs, the executive vice president of Sabre, testified that because it is familiar with the property as the tenant, it would be able to close sooner than specified in its offer. He testified that Sabre was comfortable with the environmental status of the property and that it did not plan to engage a study. Aalfs testified that Sabre has two probable sources for financing the sale, one being a sufficient line of credit already in place, the other long term financing which could be arranged for in 24 to 48 hours. Sabre contends that it did not make an offer to the trustee earlier because it was led to be-

lieve that the trustee would not accept a purchase offer less than one million dollars. When Sabre learned of the sales price through the trustee's motion and notice, it became interested in making an offer.

Absolute urges the court to approve its purchase of the real property from the trustee. It contends that Sabre lacks standing to object to the sale because Sabre is merely a competing bidder and not a creditor in the case. Indeed, Absolute argues that because Sabre is not a creditor, it was not even entitled to notice of the sale. See Fed.R.Bankr.P.2002(a)(2). In support of its standing argument, it cites *In re NEPSCO, Inc.*, 36 B.R. 25 (Bankr.D.Me.1983). In that case, the bankruptcy court ruled that a competing bidder, which was not a creditor, lacked standing to object to the trustee's proposed sale of property. *Id.* at 27. Referring to the Bankruptcy Code's provisions for sales of estate property, the court said that "the purposes of these statutes would be hindered, not furthered, by permitting a stranger to the estate to object to a sale to which no party-in-interest objected." *Id.*

Sabre asserts that as the trustee's tenant, it is a party-in-interest in the case, and is entitled to object to the sale. It contends that as a tenant, it has a pecuniary interest in the sale of the property and the outcome of the proceeding.

In considering the standing dispute, it must be remembered that there are two distinct, although related, matters before the court—the trustee's request to sell the property free of liens and the proposed sale to Absolute.

Sabre has an interest in the property, and I have no doubt that Sabre would have standing to object to a sale free of its

interest. Indeed, I doubt the trustee could accomplish such a sale.

However, the trustee states that he is not asking to sell the real estate free of Sabre's interest. He asks only to sell free of any lien for unpaid real estate taxes.

The trustee certainly may sell the real estate subject to the lease. The trustee proposes to sell it to Absolute for $642,500.00. Sabre objects contending the price is not sufficient; it offers $25,000.00 more. Absolute contends that Sabre does not have standing to object to the sale. As to the sale of the property (as opposed to a sale free of Sabre's lease), I agree.

Section 363(b)(1) gives the trustee the authority, after notice and hearing, to sell property of the estate other than in the ordinary course of business. Notice of such proposed sale must be given to creditors. Fed.R.Bankr.P. 6004(a), 2002(a)(2).

Sabre is not a creditor. The Code defines "creditor" as "an entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. § 101(10)(A). Sabre has no claim against the debtor. It has no claim against property that is or was the debtor's. An entity may be a creditor if it has a claim arise by virtue of the rejection of a lease it had with the debtor. 11 U.S.C. § 101(10)(B), referring to 11 U.S.C. § 502(g). Sabre had no lease with the debtor.

At most, if Sabre were damaged by the trustee's breach of the lease, Sabre could have an administrative claim under 11 U.S.C. § 503(b)(1)(A). An administrative claimant is not a creditor in the case. It does not file a proof of claim.

Sabre argues that it has a pecuniary interest in the case because of its lease, that its interest is directly affected by the bankruptcy. *Yadkin Valley Bank & Trust Co. v. McGee (In re Hutchinson)*, 5 F.3d 750, 756 (4th Cir.1993). I do not consider that Sabre has any pecuniary interest in the outcome of the trustee's motion to sell to Absolute for $642,500.00. Sabre's argument is merely that the price is not high enough. But Sabre's attorney admits that even at the price offered by Absolute, the cash in the bankruptcy estate is sufficient to pay any claim it might have for administrative expenses due to any breach of its lease by the trustee. Moreover, its status as a competing buyer does not give it standing to object. *In re NEPSCO, Inc.*, 36 B.R. 25, 27 (Bankr.D.Me.1983). I conclude because Sabre is not a creditor in the case and because it has no pecuniary interest in the sale to Absolute at the price proposed, it does not have standing to object to the sale.

■ Sabre contends that even if it lacks standing to object to the sale, I should nonetheless consider its offer in deciding whether to approve the trustee's sale to Absolute. But if Sabre's objection to the sale is overruled for lack of standing, there are no pending objections. Neither the Bankruptcy Code nor the Rules of Bankruptcy Procedure requires court approval of a sale of estate property absent objection. There being no pending objection to the sale, the trustee does not need a court order approving it.

■ If Sabre had standing to object to the sale, and considering its higher offer, I would approve trustee's sale to Absolute. Considering all the evidence, including Sabre's offer of $25,000.00 more for the property, I find the proposed sale to Absolute for $642,500.00 to be reasonable and in the best interest of the estate.

The price is somewhat lower than the $700,000.00 which the real estate agent estimates as the lowest likely value. Nonetheless, Salem says the industrial property market is worse than in the re-

cent past. He testified also that it would be difficult in this economy to locate a user-buyer. Also, the lack of a presently existing long term lease makes it more difficult to find an investor-buyer.

Absolute says its lender has obtained a recent appraisal of the property at $850,000.00. The sales price is 75 per cent of that appraised value. No other offers have been received. A sale of estate property outside the ordinary course of business is in the best interest of the estate and may be approved if it is for a fair and reasonable price and in good faith. *In re Apex Oil Co.*, 92 B.R. 847, 866 (Bankr. E.D.Mo.1988).

The court is not forced to reject the proposed sale merely because there is a greater offer. In this case, the greater offer is $25,000.00 more than the price proposed by Absolute. There may be good reasons for approving a lower bid. In this case, accepting the offer of Sabre would delay closing. The value to the trustee of closing sooner on the Absolute offer detracts from Sabre's incremental offer of $25,000.00. Also, the trustee would have to give notice to all creditors of a proposed sale to Sabre. Notice of the sale to Absolute cost the trustee $1,000.00. Moreover, despite Sabre's optimism, there are still unresolved contingencies to Sabre's obligation to close. In the court's view, Sabre's offer is not enough greater than Absolute's to warrant rejection of the pending proposal.

IT IS ORDERED that the motion of trustee Wil L. Forker to sell the described real estate free and clear of the lien of Woodbury County, Iowa for any unpaid real estate taxes is granted. The county's lien shall attach to the proceeds of sale.

IT IS FURTHER ORDERED that the objection of Sabre Communications Corporation to the sale of the property is dismissed.