# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

---

No. 10-6019

---

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| Robert Meill, | * | |
| | * | |
| Debtor. | * | |
| | * | |
| Gary E. VanCura, | * | Appeal from the |
| | * | United States |
| Creditor - Appellant, | * | Bankruptcy Court for the |
| | * | Northern District of Iowa |
| v. | * | |
| | * | |
| Renee K. Hanrahan, | * | |
| | * | |
| Trustee - Appellee. | * | |

---

Submitted: December 3, 2010
Filed: December 30, 2010

---

Before KRESSEL, Chief Judge, SCHERMER and NAIL, Bankruptcy Judges

SCHERMER, Bankruptcy Judge

Gary E. VanCura (the "Creditor") appeals from an Order of the bankruptcy court granting the motion of Renee K. Hanrahan, Chapter 7 trustee (the "Trustee") for the bankruptcy estate of Robert E. Meill (the "Debtor"), to sell real estate purchased

by the Debtor from the Creditor on contract free and clear of all liens.[1]   We have jurisdiction over this appeal from the final order of the bankruptcy court.  *See* 28 U.S.C. § 158(b).  For the reasons set forth below, we affirm.

## ISSUE

The issue on appeal is whether the $30,000 loan made by the Creditor to the Debtor subsequent to the time when the Debtor and Creditor entered into an installment real estate contract (the "Contract") qualifies as an advancement under the Contract that should be added to the principal amount of indebtedness secured by the real estate.  We also examine whether the bankruptcy court's approval of the Trustee's sale free of liens pursuant to § 363(f) of Title 11 of the United States Code (the "Bankruptcy Code") was proper.  We conclude: (1) the $30,000 loan was not an advancement under the Contract, (2) the loan was not, therefore, secured by the real estate, and (3) the bankruptcy court's approval of the sale was proper.

## BACKGROUND

On May 28, 2009, the Debtor filed a voluntary petition for relief under the Bankruptcy Code.  The Debtor's Chapter 11 case was converted to Chapter 7, and the Trustee was appointed trustee of the estate.

Pursuant to the Contract dated April 30, 2002, the Creditor sold a parcel of real property commonly known as 3212 Wilson Avenue SW (the "Property") to the Debtor.  The Debtor paid a portion of the purchase price at the time of the sale, with the balance due over time.  The Contract was recorded with the county recorder. Paragraph 9 of the Contract provides the Creditor with the option to make advancements for unpaid taxes, special assessments and insurance or to effectuate

---

[1]The Honorable Paul J. Kilburg, United States Bankruptcy Judge for the Northern District of Iowa.

necessary repairs and to add such sums advanced or used to the principal amount secured under the Contract.[2]

The Debtor and the Creditor were close personal friends. In 2008, the Debtor approached the Creditor asking for a loan. The Creditor initially loaned the Debtor $30,000. Shortly thereafter, he loaned the Debtor another $100,000. Both loans were evidenced by a promissory note dated June 6, 2008 in the principal amount of $130,000. The Creditor testified that the parties drafted the promissory note together. The promissory note states that it is secured by four vehicles. The promissory note was not recorded with the county recorder.

The Creditor testified that at the time he agreed to loan, or did loan, the $30,000 to the Debtor, he understood that the Debtor would use the funds to "help his office people meet payroll." Thereafter, the Debtor asked or advised the Creditor that he either had already used funds from the $30,000 loan to pay property taxes or he planned to do so. According to the Creditor, he did not object to the Debtor's use of the funds to pay property taxes because he "believe[d] my original private contract that was recorded allowed me to do that." The Creditor thought he recollected the Debtor showing him a receipt for payment of the taxes, but the Creditor had no proof that any part of the $30,000 that he loaned to the Debtor was actually used to pay taxes. In addition, the Creditor admitted that he did not use any of the $30,000 to make direct payment to the taxing authority or others for taxes, special assessments or repairs.

---

[2] The Creditor and Debtor also entered into similar contracts for two additional properties. The bankruptcy court's order disposed of the Trustee's request to sell all three properties and the Creditor appealed the bankruptcy court's order with respect to all three properties. As part of an agreement regarding the Creditor's request for a stay pending appeal, the Creditor allowed the Trustee to sell the two additional properties. The order granting the stay pending appeal required the Creditor to execute any documents necessary to dismiss his appeal as it pertains to the two additional properties.

The Trustee filed a motion to sell the Property free and clear of the Creditor's lien. In her sale motion, the Trustee proposed to sell the Property for $225,000, although its assessed value was $338,281. The Debtor's estate held approximately 461 parcels of real estate. The Trustee testified that she marketed the properties in various ways and received more than 200 calls and contacts with inquiries about the various properties. She received no offers to purchase the Property that is the subject of this decision for an amount greater than the $225,000 offer. The Trustee believes that the sale is in the best interest of the bankruptcy estate. She explained that if the sale of the Property is not approved, the benefits from the Property will accrue to the Creditor, rather than to the estate.

The Creditor asserted that the $130,000 amount should be added to the balance owed on the Contract and similar contracts for two other properties. On appeal, the Creditor conceded that the record does not support a finding that $100,000 of the loan evidenced by the promissory note was advanced for taxes, special assessments and insurance or to effectuate necessary repairs, but he maintains that a large portion of the $30,000 loan constituted an advancement for payment of real estate taxes. If the Creditor's lien secures the additional $30,000 debt, the estate would gain no funds after payment of the Creditors' secured claim and a third party judgment lien. If the $30,000 debt is not secured by the Property, the estate will retain net equity from the sale.

The bankruptcy court granted the Trustee's motion to sell the Property, explaining that the Creditor's lien does not include the debt for the 2008 loan. The bankruptcy court also found that the sale "is in good faith and for a fair and reasonable price in the circumstances."

### STANDARD OF REVIEW

We review the bankruptcy court's findings of fact for clear error and conclusions of law *de novo*. *Granite Reinsurance Co., Ltd. v. Acceptance Ins. Co. (In re Acceptance*

*Ins. Cos. Inc.*), 567 F.3d 369, 376 (8ᵗʰ Cir. 2009)(citation omitted); *Four B. Corp. v. Food Barn Stores, Inc. (In re Food Barn Stores, Inc.)*, 107 F.3d 558, 562 (8ᵗʰ Cir. 1997)(citation omitted). "We will reverse on matters committed to the bankruptcy court's discretion only if the court abused its discretion." *Food Barn*, 107 F.3d at 562.

## DISCUSSION

Section 363(b)(1) of the Bankruptcy Code allows the Trustee to sell property of the Debtor's bankruptcy estate "other than in the ordinary course of business." 11 U.S.C. §363(b)(1). Section 363(f) allows the Trustee to make such sale free and clear of an interest of another party when:

> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>
> (2) such entity consents;
>
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property.
>
> (4) such interest is in bona fide dispute; or
>
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f). Section 363(p)(2) provides that "an entity asserting an interest in property has the burden of proof on the issue of the validity, priority, or extent of such interest." 11 U.S.C. § 363(p)(2). The Creditor, a holder of a vendor's lien under Iowa law, claims that he has a lien for a large portion of the $30,000 loan made to the Debtor in 2008. *See State Bank of Iowa Falls v. Brown*, 119 N.W. 81, 83 (Iowa 1909)(vendor has a lien "for the purchase money upon property sold by him"); Iowa Code §557.18. The Trustee's sale meets the requirements of § 363(f) because the

$30,000 loan is not secured by the Property, rendering the sale price greater than the value of the liens on the property.

## Paragraph 9 of the Contract

Paragraph 9 of the Contract provides the Creditor's alleged basis for his claim that the 2008 loan was a secured advancement for payment of taxes.  It states that:

> **ADVANCEMENT BY SELLER.**  If [Debtor] fails to pay such taxes, special assessments and insurance and effect necessary repairs, as above agreed, [Creditor] may, but need not, pay such taxes, special assessments, insurance and make necessary repairs, and all sums so advanced shall be due and payable on demand or such sums so advanced may, at the election of the [Creditor], be added to the principal amount due hereunder and so secured.

To interpret the Contract, we must determine the parties' intent at the time they entered into it.  *Granite*, 567 F.3d at 378-79 ( Iowa law)(citations omitted); *The Pillsbury Co., Inc. v. Wells Dairy, Inc.*, 752 N.W. 2d 430, 436 (Iowa 2008) (citation omitted).  If there is no ambiguity, intent is determined from the language of the contract.  *Granite*, 567 F.3d at 379 (citation omitted); *Mid-America Real Estate Co. v. Iowa Realty Co., Inc.,* 406 F.3d 969, 972 (8th Cir. 2005)(citation omitted); *Hofmeyer v. Iowa Dist. Court for Fayette County*, 640 N.W.2d 225, 228 (Iowa 2001)(citation omitted).  "[A]n ambiguity occurs in a contract when a genuine uncertainty exists concerning which of two reasonable interpretations is proper."  *Granite*, 567 F.3d at 379 (quoting *Hartig Drug Co. v. Hartig*, 602 N.W.2d 794, 797 (Iowa 1999)); *R & J Enters. v. General Cas. Co. of Wis.,* — F.3d —, No. 09-3887, 2010 WL 5111677, at *1 (8th Cir. Dec. 16, 2010)(citation omitted).  All pertinent rules of interpretation must be considered before it can be determined whether an ambiguity exists.  *Hartig*, 602 N.W.2d at 797 (citation omitted).

The bankruptcy court correctly determined that the $30,000 loan from the Creditor to the Debtor did not comply with the contractual requirement for making a secured advancement. Paragraph 9 explains that the *Creditor may pay* the taxes and add the amount advanced to the principal amount of the secured debt under the Contract. The Creditor admitted that he did not pay the taxes directly to the taxing authority. Nowhere does the Contract state that a secured advancement is made when Creditor gives the Debtor a loan that is then used to pay taxes.

The words of Paragraph 9 are not ambiguous. The only meaning that can be ascribed to them is that an amount will not be added to the principal amount due and secured under the Contract unless it was advanced by the Creditor for one of the purposes set forth therein. The Creditor suggested that testimony explaining his belief that the funds from the 2008 loan would be added to the principal balance of the Contract is determinative of the parties' intent. The Creditor's testimony is insufficient to negate the clear terms of the Contract. It does not require us to make a determination that when the parties entered into the Contract in 2002, the language in Paragraph 9 was meant to allow payment of the taxes directly by the Debtor. If the parties had wanted to add to the secured principal Contract balance when the Debtor used funds loaned by the Creditor for one of the purposes set forth in Paragraph 9, they could have included language to that effect in the Contract.

Moreover, the Creditor's testimony is inconsistent regarding the purpose and use of the $30,000 loaned to the Debtor. The Creditor first said that he made or agreed to make the loan to help with the Debtor's payroll. Then, the Debtor asked or advised the Creditor that he either had already used funds from the $30,000 loan to pay property taxes or he planned to do so. The Creditor allowed the use of the funds for property taxes because he believed that his "original private contract that was recorded allowed [him] to do that." He also believed that at some point the Debtor had shown him a receipt for payment of the tax bill.

Ultimately, there is no proof that the Debtor used funds from the $30,000 loan to pay the taxes. The bankruptcy court correctly observed that other than the Creditor's testimony, the record does not contain any evidence that the sums loaned by the Creditor were used for payment of the taxes or for any other purpose included in Paragraph 9 of the Contract. We note that there was no evidence of the exact timing of the payment of the taxes, any restriction placed by the Creditor on the use of the funds or any earmarking or tracing of the funds. The Creditor's reliance on the premise that he had "no reason to believe that [the Debtor] lied to [the Creditor]" about using the funds to pay the taxes does not show that the funds loaned by the Creditor were actually used to pay the taxes.

## Approval of Sale

The bankruptcy court approved the sale, stating that the sale is "in good faith and for a fair and reasonable price in the circumstances." The Creditor did not contest the bankruptcy court's determination that the sale was conducted in good faith, but he disputes the bankruptcy court's decision that the sale price was fair and reasonable, arguing that the sale should not have been approved because the sale price was "significantly below the fair market value." We disagree.

Bankruptcy courts have wide discretion with respect to sales of assets of a bankruptcy estate; "[t]hey have 'ample latitude to strike a satisfactory balance between the relevant factors of fairness, finality, integrity, and maximization of assets." *Wintz v. Am. Freightways, Inc. (In re Wintz)*, 219 F.3d 807, 812 (8th Cir. 2000)(quoting *Food Barn*, 107 F.3d at 566 (internal quotation marks and citations omitted)). "A sale of estate property outside the ordinary course of business is in the best interest of the estate and may be approved if it is for a fair and reasonable price and in good faith." *In re LeBlanc, Inc.*, 299 B.R. 546, 552 (Bankr. N.D. Iowa 2003)(citation omitted).

The Creditor suggests that by selling so many properties during the Debtor's bankruptcy case, the Trustee unfairly flooded the market, driving down the price for the Property. But the market value of the Property was the price that the market would bear at the time. The Trustee marketed the Property and did not receive an offer to purchase it for a price greater than the $225,000 offer. The fact that the sale price is less than the appraised value of the Property does not render it unreasonable. Moreover, approval of the sale allows the benefits to accrue to the estate as a whole, rather than to the Creditor alone. The bankruptcy court properly determined that the sale price was fair and reasonable. As was previously mentioned, since the Creditor's 2008 loan was not secured by the Property, the sale price was greater than the liens on the Property and the bankruptcy court properly determined that the Trustee could sell the Property free and clear of liens. Accordingly, we agree with the bankruptcy court's decision to approve the sale of the Property.

## CONCLUSION

For the foregoing reasons, we AFFIRM the decision of the bankruptcy court.

---