**In re Donna Jo CORSE, Debtor.**

**No. 10–13555.**

United States Bankruptcy Court, D. Rhode Island.

Jan. 18, 2013.

Charles A. Pisaturo, Jr., Providence, RI, for Debtor.

## MEMORANDUM OF ORDER

DIANE FINKLE, Bankruptcy Judge.

The matter before the Court is the Motion for Approval of Intended Sale by Trustee to Private Party (Doc. # 29) (the "Sale Motion"), by which the Chapter 7 Trustee (the "Trustee") seeks, pursuant to Bankruptcy Code § 363,[1] to sell the one-quarter remainder interest (the "Bankruptcy Estate Interest") of the Debtor Donna Jo Corse in residential real property located at 55 Bryant Drive, North Kingstown, Rhode Island (the "Residence"). Josephine Corse ("Josephine"), the Debtor's mother who holds a life estate

in the Residence, along with her daughters Brenda Corse–Moretti and Linda Jackson (collectively, the "Objectors"), have filed an objection to the sale on various grounds (Doc. # 34) (the "Objection"). For the reasons articulated, the Objection is overruled and the Sale Motion is granted.

## JURISDICTION

The Court has jurisdiction over this contested matter and the parties pursuant to 28 U.S.C. §§ 1334(b) and 157(a). This is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(N).

## PROCEDURAL HISTORY

The relevant procedural history,[2] as summarized from the parties' pleadings, is as follows. Josephine holds a life estate interest in the Residence where she currently resides. In November 2007, Josephine transferred four equal remainder interests in the Residence to the Debtor and Josephine's three other daughters, Brenda Corse–Moretti, Linda Jackson, and Kathleen Victoria.[3] Josephine effectuated these transfers for estate planning purposes.

Subsequent to Josephine's transfers of these interests in the Residence to her daughters, Josephine obtained quitclaim deeds executed by each of her daughters re-conveying their reminder interests to Josephine. However, the quitclaim deeds

---

1. Unless otherwise indicated, all references to the "Bankruptcy Code" shall refer to the applicable sections of the United States Code 11 U.S.C. § 101 et seq.

2. Neither the Trustee nor the Objectors disputed the recitation of the procedural history recited in the other party's pleadings, and neither party requested an evidentiary hearing. Accordingly, for purposes of this decision only, the Court will rely on the procedural history recounted in the pleadings. See Gonzalez–Ruiz v. Doral Fin. Corp. (In re Gon-

zalez–Ruiz), 341 B.R. 371, 381 (1st Cir. BAP 2006) ("Where the parties do not request an evidentiary hearing or where the core facts are not disputed, the bankruptcy court is authorized to determine contested matters ... on the pleadings and arguments of the parties, drawing necessary inferences from the record.").

3. Kathleen Victoria has not participated in this contested matter or objected to the Trustee's proposed sale.

have never been recorded in the Land Evidence Records of the town of North Kingstown and were held by Josephine, and continue to be held by Josephine, in escrow. Her daughters, who paid no consideration for their remainder interests, hold legal title to the Residence as joint tenants. Furthermore, the Bankruptcy Estate Interest is recorded in North Kingstown's Land Evidence Records.

On August 27, 2010, the Debtor filed the present Chapter 7 case. Her Schedule A, filed on the same date (Doc. # 1), represented that the Debtor did not have an interest in any real property and did not disclose her remainder interest in the Residence.

On August 16, 2012, the Trustee filed a Motion for Approval of Bid Protection for Proposed Buyer (Doc. # 23) (the "Bid Procedures Motion"), representing that JMP Partners LLC submitted a $30,000 bid to purchase the Bankruptcy Estate Interest. In the Bid Procedures Motion, the Trustee requested that the Court approve, among other things, a minimum overbid of $2,500. No objections were filed, and the Court granted the Bid Procedures Motion on September 6, 2012 (Doc. # 27). Subsequently, on September 11, 2012, the Trustee filed the Sale Motion, and the Objectors timely filed their Objection.[4] The Court established a briefing schedule at a hearing held on November 14, 2012. The parties filed their respective memoranda (Trustee's Memorandum, Doc. # 43; Objectors' Memoranda, Doc. ## 44–46),[5] and on December 20, 2012, the Court took this matter under advisement.

## DISCUSSION

■ The underlying nature of the Objection involves the extent of the Debtor's interest in the Residence. As such, the Objectors bear the burden of proof on this issue. *See* Bankruptcy Code § 363(p)(2) ("[T]he entity asserting an interest in property has the burden of proof on the issue of the validity, priority, or extent of such interest."); *see also VanCura v. Hanrahan (In re Meill)*, 441 B.R. 610, 613–14 (8th Cir. BAP 2010) (pursuant to § 363(p)(2), the burden is on the holder of a vendor's lien who objected to a § 363 sale); *Morris v. Kasparek (In re Kasparek)*, 426 B.R. 332, 340 (10th Cir. BAP 2010) ("As the party contesting record title and asserting full equitable title to the Property, [the non-debtor] had the burden of proving the validity and extent of his equitable interest."); *Kiser v. Russell Cty., Va. (In re Kiser)*, 344 B.R. 432, 439 (Bankr.W.D.Va.2004) ("Pursuant to Bankruptcy Code § 363(p)(2) the burden of proof falls on the party asserting an interest in property. Because [creditor] is asserting a lien on the [debtors'] property it has the burden of proving to what property its lien attaches.").

The Objectors challenge the Sale Motion on four alternative grounds, each of which the Court addresses separately.

## A. The Nature of the Debtor's Interest in the Residence

■ Bankruptcy Code § 541(d) provides that if a debtor holds only bare legal title to property and not an equitable interest in such property, the bankruptcy estate interest in the property is limited to such bare legal title.[6] The Objectors contend

---

4. The Court previously authorized an extension of time for the Objectors to respond to the Sale Motion (Doc. # 31).

5. The Objectors filed three separate, but identical, memoranda. For convenience, the

Court will refer herein to the first memorandum filed (Doc. # 44) as "Obj. Mem."

6. Bankruptcy Code § 541(d) provides:

that the Debtor only holds bare legal title and not an equitable interest in the Residence. Thus, the Objectors assert that the Trustee cannot sell the Debtor's remainder interest in the Residence because such interest does not constitute property of the Debtor's bankruptcy estate in accordance with § 541(d). In support of their contention, the Objectors rely solely on a bankruptcy case interpreting Kansas law. *See In re Crouch C Stores, Inc.*, 120 B.R. 178 (Bankr.D.Kan.1990).

In *Crouch*, the debtor's mother transferred partial interests in real property to her children, including the debtor. The recorded deed reflected that the mother and her children held title as joint tenants. Subsequently, the debtor filed a Chapter 11 case, and the Court authorized the mother to sell the real property. The debtor then sought a determination regarding entitlement to the sales proceeds. The parties agreed that the debtor did not provide any consideration to her mother in exchange for the real property interest, and the mother's transfer of such interest to her children was intended as an estate planning tool and not as a gift. The court, pursuant to Bankruptcy Code § 541(d), held that the sale proceeds should be paid to the mother because, under Kansas law, the debtor held only bare legal title to the real property and not an equitable interest in the real property. The Objectors contend that similar facts arise in this case before this Court, thereby warranting the same ruling as in *Crouch*.

■ The Objectors' argument misses the mark because, in the instant case, the Debtor holds *both* a legal and equitable

interest in the Residence. The Court in *Crouch* recognized that "legal and equitable interests in property must be determined under state law." *Id.* at 180 (citing *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979)). *Crouch's* holding was premised on an interpretation of Kansas law and is not instructive regarding property rights under Rhode Island law. Moreover, the *Crouch* decision has been roundly criticized by the Bankruptcy Appellate Panel for the Tenth Circuit in *Morris v. Kasparek (In re Kasparek)*, 426 B.R. 332 (10th Cir. BAP 2010). The bankruptcy court in *Kasparek*, relying on *Crouch*, held that the debtor (a joint tenant) did not have an equitable interest in the real property at issue. The Tenth Circuit Bankruptcy Appellate Panel reversed, concluding in part that the bankruptcy court's reliance on *Crouch* was erroneous because the *Crouch* ruling was itself based on a misreading of applicable state law:

> The bankruptcy court's declaration that [the non-debtor] held "100% of the equitable title" to the Property was based entirely on the holding in a prior bankruptcy case of no precedential value, *In re Crouch*, which is premised upon a misinterpretation of Kansas law governing joint tenancy in real and personal property. In *Crouch*, the bankruptcy court stated that while "joint tenancy creates the presumption of equal ownership amongst the parties.... this is a rebuttable presumption and the burden of proof is on the party attacking the equal ownership presumption," citing as

Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest, such as a mortgage secured by real property, or an interest in such mortgage, sold by the debtor but as to which the debtor retains legal title to service or supervise the servicing of

such mortgage or interest, becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

authority a Kansas case relating to rebutting the presumption of equal ownership of joint tenants in personal property—i.e., funds in a bank account. In rebutting the presumption, [*Crouch* stated that] "[o]ne factor that the Court must consider is which party provided the purchase price."

The identity of the party that paid the purchase price (or contributed funds to a bank account) is a factor in rebutting a presumption of equal ownership with respect to personal property, but when real estate is involved, the Kansas statutes ... governing deeds, recording, notice, and express and implied trusts provide the relevant framework for an analysis of the interests of joint tenants. [A] recorded deed that is unambiguous on its face establishes record ownership. All joint tenants acquire equal undivided interests as a matter of law unless otherwise stated in the deed.... Thus, the bankruptcy court's reliance on the *Crouch* case to declare [the non-debtor] the holder of the entire equitable interest in the Property on the basis of a rebutted presumption of equal ownership, and to exclude the Property from the estate under § 541(d), was error.

*Id.* at 342 (internal citations omitted).

 In what the Court assumes is an attempt to discuss the relevant property

rights under Rhode Island law, the Objectors state, without any supporting law, that the Bankruptcy Estate Interest is "not a fee interest in real estate nor did [the children holding the remainder interests] have the ability to mortgage or otherwise pledge their interest in the real estate." (Obj. Mem. at p. 3). Furthermore, the Objectors stress that the Debtor and her siblings intended to re-convey the Residence to Josephine by the unrecorded quitclaim deeds held in escrow. (Obj. Mem. at p. 4).[7] However, because the quitclaim deeds are being held in escrow and have not been recorded, Rhode Island law, which dictates that an unrecorded deed is not binding against a bona fide purchaser, is fatal to the Objectors' argument. *See Manfredi v. Rhode Island,* 1999 WL 1318841, at *5, 1999 R.I.Super. LEXIS 80, at *13 (R.I.Super. Dec. 29, 1999) (recognizing that an unrecorded deed may be binding as between the grantor and grantee but further stating that "an unrecorded conveyance is void as to third parties...."). The Trustee is vested with the attributes of a bona fide purchaser as of the date the Debtor filed her petition. *See* Bankruptcy Code § 544(a)(3);[8] *see also Billings v. Cinnamon Ridge, Ltd. (In re Granada, Inc.),* 92 B.R. 501, 503 (Bankr.D.Utah 1988) ("By

---

**7.** The Objectors' unsubstantiated assertions of the Debtor's "intent" are not evidence. *See In re M.A.S. Realty Corp.,* 326 B.R. 31, 39 (Bankr.D.Mass.2005) ("[I]t is well settled that pleadings are not evidence...."); *In re S.N. Brown Elec. Corp.,* 136 B.R. 598, 601 (Bankr. D.Mass.1992) ("Allegations in pleadings are not evidence."). Furthermore, the Objectors concede that the quitclaim deeds are currently being held in escrow. An "escrow" is defined as a "general arrangement under which a legal document or property is delivered to a third person until *the occurrence of a condition*...." BLACK'S LAW DICTIONARY 584 (9th ed. 2009) (emphasis added). The Objectors imply that the condition to remove the deed from escrow was "until such time [Jo-

sephine] decided to exercise her right to reclaim her property in fee." (Obj. Mem. at p. 4). Josephine, however, may not act on this subjective "condition" during the post-petition period with regard to the quitclaim deed executed by the Debtor without violating the automatic stay under Bankruptcy Code § 362 or being subject to an avoidance action as an unauthorized post-petition transfer under Bankruptcy Code § 549.

**8.** In their Objections and memoranda, the Objectors have not disputed the Trustee's status as a bona fide purchaser under § 544(a)(3).

virtue of th[e] ... strong-arm power [under § 544(a)(3)], the trustee is given, by force of law, the rights and powers of a perfected bona fide purchaser of real property as of the bankruptcy petition date.").

Even the Court in *Crouch* acknowledges the applicability of Bankruptcy Code § 544(a)(3) to these circumstances, summarizing the holding in *Granada, Inc.* as allowing a chapter 11 trustee to take "title to the real property free of any *unrecorded* equitable interest ... in the property [pursuant to § 544(a)(3)]." *Crouch,* 120 B.R. at 180 (citing *Granada, Inc.,* 92 B.R. at 510) (emphasis in original). The Court in *Crouch* distinguished *Granada, Inc.* solely on the basis that the non-debtor's real property interest in *Crouch* was recorded whereas the non-debtor's real property interest in *Granada, Inc.* was unrecorded. *See Crouch,* 120 B.R. at 180; *see also Collins v. Duda (In re Duda),* 422 B.R. 339 (Bankr.D.Mass.2010) (holding that a chapter 7 trustee has superior rights to an unrecorded interest in real property pursuant to § 544(a)(3)); *Granada, Inc.,* 92 B.R. at 510 ("Had the [non-debtor's] interest been of public record, § 541(d) would operate to limit property of the estate to bare legal title. Since it was not, § 544(a)(3) operates to cut off the [non-debtor's] unrecorded equitable interest.").

In the end, even if the Debtor intended to re-convey her equitable interest in the Residence to Josephine, the unrecorded quitclaim deed executed by the Debtor is ineffective against the Trustee and does not deprive the bankruptcy estate of its legal and equitable interests in the Residence.

### B. Disclaimer of Debtor's Interest in the Residence

■ Without citation to any caselaw, the Objectors contend that the Debtor can disclaim the Bankruptcy Estate Interest under R.I. GEN. LAWS § 34–5–1(2) (2012), which states:

(2) An "interest in property" which may be disclaimed shall include:

(i) Any legal or equitable interest or estate, whether present, future, or contingent, in any real or personal property, or in any fractional part, share, or portion thereof, or in any dollar amount thereof, or in any specific asset or assets thereof;

(ii) Any fractional part, share or portion of any interest described in subsection (i), or remainder or life estate or other lesser estate therein.

■ This argument proffered by the Objectors is equally without merit. The Trustee correctly observes that the Debtor's disclaimer rights pursuant to this provision of Rhode Island law is a property right now vested in the Debtor's bankruptcy estate. Once the petition is filed, only the Trustee has the right to disclaim the Bankruptcy Estate Interest in the Residence. *See, e.g., In re Stambaugh,* 2010 WL 3724773, at *3–4, 2010 Bankr.LEXIS 3141, at *9 (Bankr.N.D.Iowa Sept. 17, 2010) ("The right to disclaim after the filing of the bankruptcy petition became property of the estate and only the trustee could administer that legal interest of the debtor. To hold otherwise would permit state law to preempt the Federal Bankruptcy Code.") (internal quotations and citations omitted).[9] Furthermore, a post-

---

**9.** It should also be noted that the Debtor has not objected to the Sale Motion and is not a party to this contested matter. In fact, in her Schedule C (Doc. # 26), the Debtor claims an exemption in the Bankruptcy Estate Interest pursuant to the so-called "wild card" exemption of Bankruptcy Code § 522(d)(5). The Debtor's exemption claim, coupled with her lack of objection to the Sale Motion, is contrary to the Objectors' speculative "under-

petition disclaimer by the Debtor would be subject to avoidance under Bankruptcy Code § 549. *See Williams v. Chenoweth,* 132 B.R. 161, 166 (Bankr.S.D.Ill.1991) (the debtor's attempt to transfer property of the estate "by disclaimer under state law may be avoided by the bankruptcy trustee under Bankruptcy Code § 549 as a postpetition transfer of property of the estate."), *aff'd, Williams v. Chenoweth (In re Chenoweth),* 143 B.R. 527 (S.D.Ill.1992), *aff'd,* 3 F.3d 1111 (7th Cir.1993).

## C. The Homestead Exemption

■ The Objectors next contend that the Debtor can, and should be allowed to, claim a homestead exemption in the Bankruptcy Estate Interest or the Residence. In fact, the Debtor evinces just the opposite intention in her bankruptcy schedules. After the Trustee received the current offer to purchase the Bankruptcy Estate Interest and filed the Bid Procedures Motion, the Debtor filed an amended Schedule C to claim an exemption *not for her remainder interest* in the Residence, but for up to $7,224 of the sale proceeds of such interest under the "wild card" exemption of Bankruptcy Code § 522(d)(5). (Doc. # 26). The Debtor has unequivocally elected her exemption relating to the Residence. The claim of exemption is vested in the Debtor, not the Objectors. Hence, the Objectors lack standing to assert a speculative and contradictory exemption right on behalf of the Debtor as a basis to block the Trustee's proposed sale. *See* Bankruptcy Code § 522(*l*) (allowing dependents to assert a debtor's exemptions only if the debtor fails to do so); *see also* Fed. R. Bankr.P. 4003(a).[10]

While their lack of standing is fatal to any objection to the Trustee's proposed sale on the basis of a potential homestead exemption, the Court will address the Objector's insistence that the decision of the U.S. District Court for the District of Rhode Island in *In re DeMasi* is controlling and the Debtor holds a homestead exemption in the Bankruptcy Estate Interest. *See* 227 B.R. 586 (D.R.I.1998). The facts in that case are significantly different than those presented in the Debtor's case before this Court, and the Objectors' reliance on *DeMasi* is unavailing. In *DeMasi,* the District Court adopted a "totality of the circumstances" test in determining what qualifies as a "residence" for purposes of claiming a federal homestead exemption:

> This Court will examine the totality of the circumstances to decide whether this house qualifies as the debtor's residence. It, thus, will look to the exemption's goals, namely the obvious intent to protect a debtor's family home.... The debtor's intention at the filing date is a key factor, but it does not carry controlling weight....
>
> . . .
>
> [The debtor] intends to occupy the property as soon as the law allows, and his actions speak louder than words from which a subjective intent can be inferred. *[The debtor] has attempted to move into the house. [The current resident] has prevented him from doing so.* However, [the debtor] can occupy the house at [the current resident's] death, and it is undisputed that the other co-

standing ... that the debtor is willing to disclaim all interest, future or otherwise she may have" to the Residence. (Obj. Mem. at p. 5).

**10.** Even if the Debtor had not claimed the "wild card" exemption, the Objectors would still lack standing to assert the Debtor's ex-

emptions under § 522(*l*) and FED. R. BANKR.P. 4003(a) inasmuch as the Objectors are not dependents of the Debtor. See Debtor's Schedule I reflecting that Debtor has no dependents (Doc. # 1).

owner ... will allow him to live there without demanding a partition.

*Id.* at 588 (internal citations omitted) (emphasis added). A key determinant for the District Court was the fact that the debtor previously attempted to move into the house. Here, the Objectors concede that (i) "the Debtor was wholly unaware of the fact that a remainder was an interest in real estate to be reported on her bankruptcy petition[;]" (ii) "[t]he Debtor did not originally disclose this remainder interest because she did not know it was an asset of hers[;]" (iii) the Debtor did not "know that she had the legal right to assert [the] right or intent" to live at the Residence, and (iv) "[w]hen [the Debtor] was advised that she has this right, she expressed to the life estate owner and to counsel that she wanted to assert her intent to live in the property...." (Obj. Mem. at p. 5). The Objectors conclude their argument by stating that "[s]ince she did not have a residence or home at the time of bankruptcy filing, the Debtor certainly *would* have intended to move into the property...." (Obj. Mem. at p. 6) (emphasis added).

First, the Objectors have not submitted one scintilla of evidence to support this assertion of the Debtor's intent or that the other co-owners would permit the Debtor to move into the Residence upon the death of the life tenant. Second, such speculation as "would have" is a far cry from the deliberate "attempt" by the *DeMasi* debtor to move into the homestead property. Third, the Objectors' unsubstantiated statement of the Debtor's alleged future intent to live in the Residence occurred post-petition and only after purported advice by counsel. Such unproven post-petition reversal of intention, if it in fact occurred, carries no weight. The District Court in *DeMasi* affirmed that "[t]he [c]ourt would look with disfavor upon a debtor inspired by bankruptcy to claim an intention to 'reside' in a former investment property or in an ancestral home that merely offers more value or equity than the house the debtor currently owns." *Id.* at 588. Fourth, as the Trustee remarks, the Debtor would not be able to claim a state law homestead exemption in the Residence under R.I. GEN. LAWS § 9–26–4.1 (2012), which states, in pertinent part:

[A]n estate of homestead to the extent of ... $500,000 ... in the land and buildings may be acquired pursuant to this section by an owner of a home or an individual who rightfully possesses the premises by lease, as a life tenant, as a beneficiary of a revocable or irrevocable trust or otherwise, and who occupies or intends to occupy the home as his or her principal residence.

■ As my predecessor has previously held, the fact that a debtor may intend to occupy a residence in which he or she holds a remainder interest does not, standing alone, satisfy the debtor's burden under either the "totality of the circumstances" test established in *DeMasi* or R.I. GEN. LAWS § 9–26–4.1(a). *See In re Franklino*, 329 B.R. 363 (Bankr.D.R.I. 2005), *aff'd, Franklino v. Richardson*, 2006 WL 6846698, 2006 Bankr.LEXIS 4666 (1st Cir. BAP Jan. 20, 2006).

In summary, I conclude that the Objectors have no standing to challenge the Trustee's proposed sale relying on the homestead exemption provisions of the Bankruptcy Code. In any event, under the particular circumstances presented to the Court, the Debtor has neither availed herself of the homestead exemption for her remainder interest in the Residence nor is such exemption now available to the Debtor for such interest.

**D. The Undermining of the Grantor's Intent by Destroying the Joint Tenancy**

■ The Objectors' final argument is that the Trustee's sale will place the

daughters at a "distinct disadvantage" vis-à-vis the proposed buyer (a general partnership) by defeating the right of joint tenancy, which is imbued with the rights of survivorship, and converting the joint tenancy into a tenancy in common (Obj. Mem. at p. 7). In turn, they complain that this "frustrates the entire estate planning intent of the life tenant [Josephine]." [11] *Id.* at p. 7. Although the Objectors cite legal authority discussing joint tenancy rights under Rhode Island law, they fail to provide the Court with applicable legal authority as to why any potentially adverse effect on their respective property rights justify denial of the proposed sale pursuant to Bankruptcy Code § 363. The Trustee correctly counters this argument, noting that such objections may be relevant under § 363(h) [12] if the Trustee was attempting to sell interests in the Residence other than the Debtor's remainder interest. It is clear that all the Trustee seeks to sell is the Bankruptcy Estate Interest in the Residence, and at that, expressly subject to the rights of Josephine as a life tenant. (Trustee's Memorandum, Doc.

# 43 at p. 8) ("The Trustee is not seeking a partition of the [Residence] nor is the Trustee attempting to displace the life estate tenant. The Trustee wishes to sell solely the remainder interest of the Debtor.").

The Objectors do not cite any provision of the Bankruptcy Code that erodes the authorization of the Trustee under Bankruptcy Code § 363 to sell the Bankruptcy Estate Interest or grants Josephine the immutable right to prevent the Debtor's creditors from receiving her share of the proceeds from the ultimate sale of the Residence. The Court reiterates that Bankruptcy Code § 363(h) is not implicated in this sale transaction. The mere fact that the sale of the Debtor's interest, and not that of the co-owners, "creates a distinct disadvantage to those named remainder person heirs because their lives are measured, wherein [the buyer] is not," thereby raising the prospect that the heirs of the remainder may "get nothing" in the future, is far too speculative and does not limit the Trustee' powers under Bankruptcy Code § 363. (*See* Obj. Mem. at p. 7).[13]

**11.** The Objectors explain that because the proposed buyer will have acquired the Bankruptcy Estate Interest subsequent to the original conveyances to Josephine's daughters as joint tenants, the unity of interests required to create a joint tenancy will be broken and the interests of the proposed buyer with the three non-debtor daughters will be converted by operation of Rhode Island law to ownership interests as tenants in common. *See* Obj. Mem. at p. 8.

**12.** Bankruptcy Code § 363(h) provides:

(h) Notwithstanding subsection (f) of this section, the trustee may sell both the estate's interest, under subsection (b) or (c) of this section, and the interest of any co-owner in property in which the debtor had, at the time of the commencement of the case, an undivided interest as a tenant in common, joint tenant, or tenant by the entirety, only if—

(1) partition in kind of such property among the estate and such co-owners is impracticable;

(2) sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owners;

(3) the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners; and

(4) such property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power.

**13.** This purported "disadvantage" is not something the Debtor is troubled by as evident from her exemption claim to a portion of the sale proceeds to be received by the bankruptcy estate. Apparently, the Debtor's sister Kathleen Victoria is also willing to accept this

Finally, there is no provision of state law (other than the vehicle of a valid spendthrift trust)[14] of which the Court is aware—and certainly none the Objectors point to—that would supersede the Bankruptcy Code policy that all non-exempt assets of a debtor under Chapter 7 be distributed to the debtor's creditors.

## CONCLUSION

Bankruptcy Code § 363 authorizes the sale proposed by the Trustee, and the Objectors have failed to satisfy their burden to establish otherwise. The Objection is **OVERRULED** and the Sale Motion is **GRANTED.** To ensure clarity for title purposes, the Court believes that a separate order approving the sale should be entered. The Trustee shall submit a proposed sale order for the Court's consideration within five days of the entry of this Memorandum of Order.

prospect as she has not objected to the Trustee's proposed sale.

14. A debtor's interest in assets held in a validly established and recognized spendthrift under state law is not deemed to be property of a debtor's bankruptcy estate by operation of Bankruptcy Code § 541(c)(2).